BENJAMIN WING AND NATHANIEL B. DAVIDSON *v.* THE NEW
YORK AND ERIE R. R. Co.

W. shipped 144 barrels of potatoes by the B. C. & N. Y. R. R. for New York, pay-
ing them the freight for the entire distance. The potatoes were delivered by that
company to the N. Y. & E. R. R. Co. at C., to be transported to New York by
them. While in their custody and on the deck of a barge in the North River,
they were frozen.

*Held*, that the N. Y. & E. R. R. Co. were liable to the owner for the injuries occa-
sioned to the potatoes by the freezing.

An action can be maintained, by the owner of goods, against a carrier, in whose
custody they are injured, although there is no privity of contract between the
owner and the carrier, and notwithstanding the contract was, in fact, made be-
tween the carrier and another carrier, who undertook the carriage of the goods
for the whole distance, and received freight therefor.

The freezing of perishable articles, by reason of an unusual intensity of cold, is not
such an intervention of the *vis major* as excuses the carrier, if the accident might
have been prevented by the exercise of due diligence and care on his part.

The fact, that the carrier has done what is usual, is not sufficient to exempt him
from a charge of negligence. He must show that he has done what was neces-
sary to be done under all the circumstances.

The practice of entering judgment *pro forma* by stipulation, and without prejudice
to the rights of the parties, in the Marine or district courts is improper, and can-
not be sanctioned by this court. In all such cases, the judgment will be consid-
ered final and conclusive upon questions of fact, unless clearly against the weight
of evidence.

Where judgment is rendered for the plaintiff, for an amount fixed by stipulation
between the parties, the plaintiff is entitled to costs in addition thereto, although
they are not mentioned in the stipulation.

APPEAL by defendants from a judgment of the Marine Court.
This was an action brought against the defendants, as common
carriers, for injuries to a shipment of potatoes while in their
charge. The potatoes in question were shipped by the plain-
tiffs on the Buffalo and Corning Railroad for New York, that
road receiving freight for the whole distance, and undertaking
their safe delivery in New York. By that road they were car-
ried to Corning, where they were delivered to the defendants.

The defendants brought them on to Piermont, and there, after a delay of two days, shipped them on a barge connected with their line for New York. While on the barge they were frozen, and for the damages thus caused them this action was brought. A judgment was rendered *pro forma* in the Marine Court for the plaintiff, for $350, that amount being agreed on by stipulation between the parties. Judgment was rendered with costs

*Eaton and Davis*, for the appellants.

I. If defendants can be held responsible to plaintiffs, it must be either on the ground that there is a privity between the parties, plaintiffs and defendants, so that they are mutually bound to each other upon the contract to carry safely, or that the defendants are responsible for a positive and affirmative wrong or tort committed to these goods while in their possession, that is, that plaintiff being a third person (no express contract having been made with them), the defendants, to be made liable to them, must have been guilty of a misfeasance, or positive wrong, and must be charged as a wrong-doer, and not merely guilty of a nonfeasance or omission of duty.

A. They cannot be held on any express contract entered into between plaintiffs and defendants below, for the evidence shows that the only express contract was made by plaintiffs, with the first company, by which that company received the goods, and agreed to transport them to New York, and received the compensation for carrying them the whole distance, and by which we claim they are the only parties liable to plaintiffs, if any, for the safe delivery of the potatoes in New York. *Wilcox* v. *Parmelee*, 3 Sand. 610.

B. That the Buffalo, Corning and N. Y. R. R. Co. is liable, under their agreement, for the safe delivery of these potatoes in New York, there can be no question, for it is well settled law, that, in the absence of any express contract, " if a carrier, knowingly, receive a parcel directed or consigned to any particular place, he undertakes to carry it there himself, unless he makes known a different purpose and undertaking to the owner " (1

Parsons on Cont. p. 686), or unless a different undertaking must be implied from the known usages and customs of the business, as when a carrier has a certain and well-known route ; and *a fortiori* they are liable in this case by their express agreement.

C. There is no express agreement between plaintiffs and defendants, neither is there any privity of contract on the ground of sub-agency between them, for the contract between the Buffalo, Corning and N. Y. R. R. Co. and plaintiffs being express, that the said company should deliver this property in New York, there can be no implied authority given by plaintiffs to said company to employ a sub-agent (to substitute or delegate). They agree to do it themselves. The relation between the defendants below and the Buffalo and Corning Company being strictly that of service, and to them the rule *respondeat superior* applies; for it is a well-settled rule of law that a party can be held liable to the principal (in this case the shippers) as a sub-agent, only in cases where the superior agent had power to create a sub-agency. See Story on Agency, § 201, and cases cited in note 2, § 217, a; *Drury* v. *The Manhattan Co.*, 2 Denio, 115. Affirmed in 5 Denio, 639. And we claim in this case that the first company has, by its express promise, deprived itself of the right to appoint a sub-agent. See *Mallory* v. *Burrett*, 1 E. D. Smith, 234. It follows, therefore, that the defendants below could only render service, and are responsible only to their principal for any negligence or omission to perform that service. Story on Agency, § 217, a, and cases cited in note 5 ; id. § 308 and notes 4 and 5, and cases cited ; *Stevens* v. *Babcock*, 3 Barnwall & Adolphus, 354 ; *Pinto* v. *Santos*, 5 Taunton, 447 ; *Lane* v. *Cotton*, 12 Mod. 488 ; *Alexander* v. *Southey*, 5 Barn. & Ald. 247 ; *Montgomery County Bank* v. *Albany City Bank*, 3 Selden, 459. On this branch of the investigation, we claim that the relation of agency or of service must be established between plaintiffs and defendants, to hold defendants liable.

D. To make defendants liable to plaintiffs, on the contract, there must have been a mutuality of obligation, and the de-

fendants, in the court below, could not have recovered of the plaintiffs, in an action against them, the compensation for carrying the potatoes in question. This has been decided by many. well-adjudicated cases. *Shawling* v. *Tomlinson*, 6 Taunton, 147 *Cull* v. *Backhouse*, 6 id. 148, n ; *Montgomery County Bank* v. *Albany City Bank*, 3 Selden, 459. See also *Blake* v. *Ferris*, 1 id. 48, as to responsibility of agents and servants.

E. All that defendants did in this case was, to bring the car of the Buffalo, Corning and N. Y. R. R. Co., containing the potatoes, over their road to Piermont, and then forward them to New York; they merely doing this for the first company. This, we claim, is mere service and not sub-agency, and makes the first company the superior, and alone answerable to the plaintiffs. Story on Agency, § 310, note 2, says : " If the servant of a common carrier negligently loses a parcel of goods intrusted to him, the principal, and not the servant, is responsible to the bailor or owner." And the rule holds here also. See *Lane* v. *Cotton*, 12 Mod. 488, and *Blake* v. *Ferris*, 1 Selden, 48.

If we are right in this, that the Buffalo, Corning and N. Y. R. R. Co., in this case, is a *superior*, it follows that we are not liable to plaintiffs, for there can be only one superior for one subordinate. *Blake* v. *Ferris, vide supra.*

We certainly are liable to the first company for a non-performance, after having undertaken the service, and that company to us, for the compensation for such services.

II. The defendants below are not liable to plaintiffs below for any positive or affirmative wrong, or tort committed to these goods while in their possession ; the acts complained of being solely of a negative character—a mere nonfeasance or omission of duty, for which the principal or contracting party alone is liable. Story on Agency, p. 398, § 308, and cases cited; 1 Parsons on Contracts, 87 and note a, a; *Wright* v. *Wilcox*, 19 Wendell, 343 ; *Lane* v. *Cotton*, 12 Mod. 488 ; *Vanderbilt* v. *Richmond Turnpike Co.*, 2 Com. 479. And assuming the truth of our first position, that there is no privity between the adverse parties to the record, and, therefore, that defendants are not liable on contract,

we may dismiss this part of the case, for the non-liability of defendants must follow as a corollary, there being not the slightest evidence in the return of the justice showing a tortious act, or positive wrong on their part.

III. Assuming that there is a privity of contract in this case, and that there is delay which is not excused (both of which we deny), still defendants are not liable for injury to these goods by freezing, it not being a loss resulting from the delay, but caused by *vis major*.

A. It is a settled rule of law that a common carrier is not liable in damages for an injury to goods, while being transported, which is not the *natural and necessary* consequence of the act complained of, and the general rule as to damages applies. *Wisbert* v. *The N. Y. and Erie R. R. Co.*, 19 Barbour, 38 ; *Vanderslice* v. *Newton*, 4 Com. 130; *Walrath* v. *Redfield*, 11 Barbour, 368 ; Sedgwick on the Measure of Damages, pp. 65, 66 ; *Hargous* v. *Ablon*, 3 Denio, 406 ; *Mosier* v. *The U. & S. R. R. Co.*, 8 Barb. 427.

B. Here it will not be contended that the freezing was produced by the delay ; the two are totally distinct, having no connection whatever, the one not a consequent of the other.

C. The freezing and damage would have been precisely the same, if there had been no delay, which shows that one is not the natural result of the other. To be recoverable, the damage must flow directly from the delay. 19 Barbour, *ubi supra*. Here the damage is created by a totally distinct element, over which defendants have no control, and against which they cannot provide. If the damage in this case had resulted from some natural quality inherent in the article (as natural decay, fermentation or the like), it might be said that the delay was one of the elements which caused the loss; but this cannot be said when the loss is occasioned by some outside influence, as frost. Besides, the evidence shows that these potatoes, if forwarded immediately, must have frozen before they could have been delivered, it being freezing weather at the time of their arrival

at Piermont, and continued so until they were delivered in New York.

IV. The judgment should be reversed, for the reason that it was not entered according to the stipulation, it being for $350 and costs, instead of $350, the amount agreed upon.

*T. D. Pelton,* for the respondents.

I. The defendants were liable as common carriers. They received the property and commenced its transit to New York city; and, having done so, are accountable to the owners of these goods for their safe delivery. *Merchants' Bank* v. *The Jersey Steam Navigation Company,* 6 How. U. S. Rep. 344; Chitty on Contracts, 480; Story on Bailments, 509.

II. The extent of a common carrier's liability is declared by law and fixed by considerations of public policy, independent of contract. *Hollister* v. *Knowlton,* 19 Wend. 239, and *Thurman* v. *Wells,* 18 Barb. 500.

III. The undertaking to carry the goods charged the defendants with the duty of carrying them safely for the benefit of the owners. *Nolton* v. *The Western Railroad Corporation,* 10 How. Pr. Rep. 97; 5 Sand. Rep. 180; 1 Caines' Rep. 45.

IV. The contract between the Buffalo and Corning Railroad Company and the plaintiffs, if any existed, was, in contemplation of law, a contract between the plaintiffs and defendants.

1. The law will often raise a privity when none in point of fact apparently subsists. It is enough that some benefit results from one party to the other, no matter how remote. It is sufficient that the defendants received the goods and commenced their transit to New York city, to make them privy with the plaintiffs as common carriers. In receiving the goods upon their road and commencing the transit, they undertook to carry safely to New York city, and were insurers against everything but unavoidable and inevitable accident; and, as a matter of law, they contracted with the plaintiffs to transport the goods to and deliver them to the plaintiffs' consignee in New York, pursuant to the terms of the contract. 6 How. U. S. Rep. 344 (cited above);

*Wibert* v. *New York and Erie R. R. Co.*, 2 Kern. Rep. 245; 19 Wend. 537.

This privity exists even if the defendants are to be regarded as agents of the Buffalo and Corning Company, for the well-known customs and usages of the roads created an implied agreement between plaintiffs and defendants.

V. The court will look to the substantial parties in interest, to avoid circuity of action. 6 How. U. S. Rep. 344 (cited above).

BRADY, J.—The plaintiffs delivered to the Buffalo, Corning and New York Railroad 144 barrels of potatoes, to be transported from Rochester to New York, at the same time paying the price of such transportation. That road unites with the defendants' road at Corning, and the potatoes were sent over defendants' road to Piermont from thence. The route of the defendants terminates at New York, although the terminus of their rail is at Piermont. No particular arrangement exists between these companies, except that defendants deliver to and receive freight from Buffalo, Corning and New York Road at Corning, and have a fixed fare thereto and therefrom. There was no agreement of any kind between plaintiffs and defendants proved, and no agreement limiting the liability of either defendants, or the Buffalo and Corning company, as common carriers. The potatoes were received at Corning, as freight is usually received there by defendants, and when they arrived in New York were frozen; and it is alleged that they were so frozen by the negligence of the defendants. They arrived at Piermont on Saturday evening, December, 1855, but the way-bill of the car in which they were carried was not sent with it or brought with it, and the potatoes were necessarily detained until it could be procured, to ascertain their destination. The way-bill was sent for, and was received on Tuesday following the arrival of the potatoes at Piermont. Whether the defendants or the Buffalo, Corning and New York Road were responsible for the omission to bring or send the way-bill, does not distinctly appear. The testimony is, that the conductor did not bring it,

but whether the conductor was the servant of the defendants or the other company is not stated or established. On Tuesday the potatoes were put on the barge of defendants, at Piermont, to be sent at 4, P. M., of that day to New York, and Mr. Kimball examined one barrel while the defendants were loading them on the barge. The potatoes in that barrel did not appear to be frozen, and the agent then told Mr. Kimball that a number of the barrels which had been unheaded were not frozen. On Wednesday morning, at about 5 o'clock, that being the day succeeding the day on which the potatoes were put on the barge, they arrived in New York. Mr. Kimball saw them during the morning of that day, and they were frozen badly.

It seems, from this statement of the facts, that the delay at Piermont was not the immediate cause of the damage to the potatoes, and justifies the conclusion that on their transit from that place to New York they were frozen.

The defendants insist that they are not liable, because there was no contract, express or implied, between them and the plaintiffs, and that, in any aspect of the case, the Buffalo, Corning and New York Road are alone responsible to the plaintiffs; but if it should be held that they are liable directly to the plaintiffs, then that they are so only for the omission of due diligence in the delivery of the potatoes, there being no agreement limiting the time for such delivery ; and further, that the potatoes having been frozen, the loss resulted from the intervention of the *vis major*, which in any event discharges them from liability.

A great variety of questions, growing out of the relations of the companies and the plaintiffs to each other, have been presented by the appellants with great ingenuity, and discussed ably and elaborately by appellant and respondent. It will not be necessary, however, to consider many of them, because the right of the plaintiffs to sue the defendants directly seems to be settled by several well-adjudicated cases. *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How. U. S. Rep. 330; *Sanderson* v. *Lambertson*, 6 Binney, 129; *Green* v. *Clarke*, 2 Kern. 343; 2 Greenleaf Ev., § 210. The defendants, however, were not liable,

unless guilty of negligence in the transportation or manner of carrying the freight. Freezing is the act of God, and an excuse, if the carrier be blameless. On that question the court below has found for the plaintiffs, and we see no reason to disturb that finding.

It is said, by the appellants, that the judgment was entered *pro forma* by stipulation, without prejudice to their rights in any respect. We cannot sanction the practice of such a proceeding, and will in all cases regard the finding of the court below conclusive, unless clearly against the weight of evidence. Such is the established rule of this court.

But as to the negligence of the defendants. The weather was very cold, and had been for some days previous to the day on which the potatoes were examined by the witness Kimball, and was for some days subsequently, as appears by a table which forms one of the exhibits, showing an average of thirty degrees, and which table is accompanied by an admission that the thermometer fell ten degrees at night, during the period over which that table extends. The potatoes were perishable, and had been kept at Piermont nearly three days; they were not injured by that delay, however, and the attention of the employees of the defendants, or one of them, was called to both of these circumstances. When placed on the barge, they were put upon the upper deck, which was enclosed, it is true, but there was nothing to prevent their being placed below deck. The only excuses offered for not putting them there are, that they were put in the usual locality, and it would have taken some time longer to do it. The fact, that they were perishable, imposed upon the defendants more than ordinary care and diligence as mere bailees, and the obligation to deposit them most securely against cold. That it would take longer to do it does not relieve them of the duty. The intensity of the cold created also the obligation of additional vigilance, and what was usual was not the consideration. What was necessary to be done under all the circumstances was the true criterion. "The freezing of our canals or rivers has indeed been held such an intervention of the *vis major*

as excuses the delay of the common carrier by water; but still he is bound to exercise at least ordinary forecast in anticipating the obstruction—to exert the proper means for overcoming it, and to exercise due diligence in accomplishing the transportation as soon as it ceases to operate. In the mean time he must not be guilty of negligence in taking care of the article detained." *Bow man* v. *Teall*, 23 Wend. 310.

We have no doubt that the defendants did not take the care which the law exacts from carriers in the discharge of their duties, and that, as we have stated, the plaintiffs' property was damaged by their negligence.

The amount which the plaintiffs were entitled to recover, the defendants being liable, has been passed upon by the court below under a stipulation limiting the sum; but it is said that the judgment is erroneous, because the court awarded costs to the plaintiffs in addition to the amount agreed upon. There is no error in this. Costs followed as a matter of course upon the plaintiffs' recovery, and, if the defendants wished to protect themselves against the payment of them, they should have inserted it in the stipulation.

There is nothing in this case to justify the theory that the potatoes were frozen after their arrival in New York, and by reason of the delay of the plaintiffs in removing them. The proof establishes that the freezing took place after they were put on the barge for carriage to New York, and such must have been the judgment of the court below.

Judgment affirmed.