(93 Misc. Rep. 111)

FISH v. ERIE R. CO.

(Supreme Court, Appellate Term, First Department. January 4, 1916.)

1. CARRIERS ⬡⇒119—CARRIAGE OF GOODS—ACT OF GOD.

An unusually heavy snowstorm in February is not an act of God, within a bill of lading excusing a carrier for injuries resulting therefrom, though delay in transportation of a shipment, where the carrier made all reasonable efforts to obtain men to clear its tracks, may be excused by reason of such snowstorm.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 523–530; Dec. Dig. ⬡⇒119.]

2. CARRIERS ⬡⇒134—CARRIAGE OF GOODS—ACTIONS—EVIDENCE.

In an action for damages for the freezing of a shipment of celery, claimed to have resulted from delay in transportation, evidence *held* to warrant a finding that the carrier exercised reasonable care under the circumstances, but that notwithstanding it the celery froze.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 588–592, 607; Dec. Dig. ⬡⇒134.]

3. EVIDENCE ⬡⇒539—OPINION EVIDENCE—EXPERT TESTIMONY.

One not familiar with the materials of which refrigerator cars are constructed is not qualified to testify as an expert to their cold-resisting properties.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2349–2352; Dec. Dig. ⬡⇒539.]

4. CARRIERS ⬡⇒136—CARRIAGE OF GOODS—ACTIONS—EVIDENCE.

In an action for damages for the freezing of a shipment of celery, the question whether the celery froze during transit, as claimed, *held* under the evidence for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 478, 596–598; Dec. Dig. ⬡⇒136.]

5. PLEADING ⬡⇒127—ADMISSIONS—WHAT CONSTITUTE.

In an action for damages for the freezing of two shipments of celery, the carrier set up as a special defense a provision in the bill of lading exempting it from loss, damage, or delay caused by act of God, that the celery was duly transported to its destination, that it arrived in a damaged condition, that such condition was caused by the celery having become frozen in transit, due to the low temperature then existing and to a defect in the article itself, and that such condition was not contributed to by any negligence of defendant. *Held*, that such special defense was not a conclusive admission that the celery of both shipments was frozen during transit, but should only be considered by the jury on that question, along with other evidence.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 264–268; Dec. Dig. ⬡⇒127.]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by George F. Fish against the Erie Railroad Company. From a judgment for plaintiff, and an order denying new trial, defendant appeals. Reversed and remanded.

Argued December term, 1915, before GUY, PAGE, and PHILBIN, JJ.

Stetson, Jennings & Russell, of New York City (Allen S. Hubbard, of New York City, of counsel), for appellant.

Neil P. Cullom, of New York City, for respondent.

⬡⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

GUY, J. Plaintiff has recovered a judgment against defendant carrier of goods for damages to two shipments of celery, and defendant appeals.

The celery was shipped in two refrigerator cars in February, 1914, and plaintiff claimed that the first shipment, in car 62041, was delivered to defendant at Elmira, N. Y., on February 14th. The second shipment, in car 62106, was made at the same place February 20, 1914. Car 62041, the first shipment, arrived at Jersey City February 18th, four days after its alleged delivery to the defendant; the other shipment reached Jersey City on the day following its delivery to the carrier. The plaintiff testified that he examined the celery on its arrival at his store in New York City; that one-third of it was frozen, a total loss; and that the claim made in the action was merely for one-sixth of the damage. The jury rendered a verdict for the full amount demanded.

After denying the material allegations of the complaint the defendant set up as a special defense the provision of the uniform bill of lading discharging it from liability in case of loss, damage, or delay caused by the act of God; that the celery was duly transported to its destination; that it arrived in a damaged condition; that such damaged condition was caused by the celery having become frozen in transit, due to the low temperature then existing and to a defect or vice in the property itself, and said damaged condition was in no way caused or contributed to by any negligence on the part of the defendant.

It was conceded that on or before February 13, 1914, car 62041, then standing on a railroad siding used by the Hygeia Refrigerator Company at Elmira, N. Y., was placed at the loading platform of that company; that on February 14th the Hygeia Company inspected the car, lined the inside thereof with paper, filled its tanks with ice, examined and adjusted the ventilators, drips, and drains, loaded the car with 168 crates of celery in good order, and sealed the doors on both sides of the car. Thereafter the Hygeia Company filled in and signed a bill of lading and a shipping order and mailed them to the defendant, and a clerk of the defendant at Elmira signed the bill of lading, returned it to the consignor, and placed his initial on the shipping order and retained it. At 8:40 p. m. on February 16th car 62041 left Elmira for New York.

It was testified in behalf of defendant by its employé Thompson that it began to snow at Elmira on February 13th, and that it snowed hard all day long on the following day; that the siding on which car 62041 was standing was below the level of the main track at that place, and the car was 28 car lengths from the main track; that the track was near the river, and the snow drifted so that it varied from about one foot to more than four feet in depth; that the witness had lived in Elmira over 50 years and did not remember a worse snowstorm; that on Monday morning, February 16th, after the main track was cleared, the witness got 15 laborers, who shoveled snow in the switch from 7 in the morning till 4 in the afternoon before he could get the switch clear of the snow; that the main track, the interlocks,

had to be opened first; that the defendant had over 100 men working all over the place clearing off the snow; that the sections were doubled from 8 to 16 men; that he tried to, but could not, hire any more men to clear away the snow.

It appears from a copy of the record of the United States Weather Bureau that there was a snowfall of 24 inches at Elmira on February 14th, and that the minimum temperature there on that day was 2 degrees Fahrenheit, 7 degrees on the 15th, and 4 degrees below zero on the 16th. The minimum temperature at New York February 18th was 22 degrees and on the 19th 26 degrees Fahrenheit.

When this car 62041 arrived at New York February 18th at 5 p. m., defendant's witness testified that the seals on the doors were intact, the plugs in the ice tanks at either end of the car, for the purpose of maintaining proper circulation, were in position, and the hatches to keep the cold air from entering were closed. Plaintiff took 50 crates of the celery from this car the same day it arrived, and the balance of the shipment the following day. Under normal conditions in February, 1914, a car which was delivered to defendant at Elmira for transportation to New York City would leave the morning after it was received there and arrive in Jersey City about 24 hours later, and it took about a day to get a car from Jersey City to New York after it was ordered.

[1, 2] Defendant's counsel asked the trial court to charge the jury that:

"If you believe the testimony of defendant's witness Thompson as to the snowstorm, you will find that the snowstorm was an act of God."

The court properly denied the request, for, while the snowstorm was undoubtedly an act of God, it was not necessarily an act of God within the meaning of the contract, exonerating the defendant from liability. Nevertheless, if the jury believed Thompson's testimony, they would have been authorized to find that the defendant did all that could be reasonably expected of it under the circumstances to move the property towards its destination, and, in connection with the other evidence introduced by defendant, to determine that because of the inevitable delay under the existing climatic conditions the celery was frozen in transit, despite the reasonable care exercised by the defendant. See Cormack v. N. Y., N. H. & H. R. R. Co., 196 N. Y. 442, 90 N. E. 56, 24 L. R. A. (N. S.) 1209, 17 Ann. Cas. 949; Wing v. N. Y. & Erie R. R. Co., 1 Hilt. 235. The court charged the jury, however:

"If you should find this was an unusual snowstorm, such as did block the work and progress on that railroad, was it that act, was it the act itself, or the snowstorm itself, which caused the damage, or was it something inherently defective in the equipment of the company's car? Would these goods have been frozen if the equipment of the car had been correct, although the snowstorm was unusually severe and blocked the car in its progress?"

[3] But the only witness produced by plaintiff to prove the defective construction of defendant's cars was not shown to have been qualified to testify as to the construction of such cars or of any other refrigerator cars, for it appears from his testimony that he did not

know of what they were constructed. Indeed, the trial justice had ruled that the witness was not qualified, but subsequently, against the objection and exception of the defendant, allowed the following question: "Give your opinion whether or not, during this snowstorm, a car properly constructed would preserve celery in good condition for five days?" To which the witness answered: "I think it would." This was prejudicial error. Weibert v. Hanan, 202 N. Y. 328, 95 N. E. 688; Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608.

[4] In respect to car 62106, which did not leave Elmira until February 20th, it was conceded that the day before it left Elmira the Hygeia Company loaded the car at its siding, inspected it, lined the inside with paper, and took the same steps generally as in the case of car 62041 on February 14th. Car 62106 arrived at Jersey City in about 16½ hours from Elmira, and, as defendant's witness testified, in good condition. February 22d, the day after the arrival of this car, was Sunday. The defendant's office was not open for business on that day, and on the following day the plaintiff was notified of the arrival of the car. Plaintiff ordered it on the Jersey City working track at 10:25 Monday morning, and it was so moved by the defendant in the regular course of business that afternoon. On the next day, February 24th plaintiff took delivery of 60 crates from this car, which stood in the Jersey City yards all day. On the 25th the plaintiff took no celery, on the 26th he took 56 crates, and on the 27th the balance of the shipment. According to the United States Weather Bureau report the temperature at New York on February 24th varied from 16 degrees to 1 degree Fahrenheit; on the following day from 24 degrees to 1 degree; on the 26th the minimum was 13 degrees, and on the 27th 27 degrees.

In view of the prompt arrival of this car at Jersey City, and of the delay in taking away its contents after it was opened, there would appear to have been a fair question for the jury as to whether the damage testified to by the plaintiff had occurred during the transit of the celery or not. Baer v. N. Y. C. & H. R. R. Co., 83 Misc. Rep. 88, 144 N. Y. Supp. 682; Becker v. Penn. R. R. Co., 109 App. Div. 230, 96 N. Y. Supp. 1.

[5] The learned trial court, however, held that the defendant was concluded by its admission in the special defense that the celery was frozen in transit, and submitted the case to the jury on that theory. This was error, for in the light of the defendant's denial the admission could at most be considered by the jury with all the other evidence on the trial in deciding and determining the issues in the action. Talbot v. Laubheim, 188 N. Y. 421, 81 N. E. 163; Kraus v. Birnbaum, 200 N. Y. 130, 93 N. E. 474.

The judgment and order should be reversed, and a new trial ordered, with $30 costs to the appellant to abide the event. All concur.