## No. 9557.

FORT *v.* THE DENVER & RIO GRANDE RAILROAD CO.

Decided January 10, 1921.

Action against carrier for damage resulting from freezing of potatoes in transit. Motion of defendant for judgment on the pleadings, sustained.

*Affirmed.*

1. RAILROADS—*Rates and Regulations—Attack.*   The validity of the rates and regulations of a common carrier cannot be determined by a court in an action for damages by a shipper; so long as operative they are binding upon both and will be enforced in fixing the liability of the parties.

   The shipper has a right in any appropriate proceeding to attack the rate, regulation or classification.

2.      *Liability for Damage to Goods by Freezing.*   Under the common law a carrier is not liable for losses or injuries resulting from the inherent nature of the goods, which would not have been prevented by the exercise of ordinary care upon its part.

   Under this rule freezing of potatoes will be held to be caused by the nature of the property so as to exempt the carrier from liability, provided it has been guilty of no previous negligence or misconduct which can be considered the proximate cause of the injury.

*Error to the District Court of the City and County of Denver, Hon. John A. Perry, Judge.*

Messrs. ALLEN & WEBSTER, for plaintiff in error.

Mr. E. N. CLARK, Mr. J. G. MCMURRY, for defendant in error.

MR. JUSTICE SCOTT delivered the opinion of the court.

THIS action is by the plaintiff in error to recover damages from the defendant in error by reason of alleged negligence in permitting portions of several carloads of potatoes to freeze while in transit.

The complaint alleged the shipment of five carloads of potatoes from within the state of Colorado to points beyond the state delivered to the defendant as the initial carrier and to be transported over connecting lines. The claim for damages to each carload is made a separate cause of action. Four of these counts only are involved here and for the purposes of this review may be considered as one.

The facts as they relate to the first count only will be considered. It is alleged that the plaintiff on November 12, 1915, delivered to the defendant a car load shipment of potatoes at Del Norte, Colorado, for carriage to Pueblo over defendant's road, and thence over connecting lines to Waco, Texas, under contract witnessed by a certain bill of lading. That the temperature at the time of delivery to the carrier and acceptance by it was not such as to freeze the potatoes in the car, several hundred pounds of straw having been placed in the car for protection from the ordinary temperature existing at Del Norte. That in the carriage of potatoes so encased in straw in the winter time in moderate weather, it is sufficient to close the vents of the car, but when very low temperatures are encountered, due care and diligence upon the part of the carrier require that some artificial heat be supplied by the carrier and that oil stoves are usually and customarily supplied by the carrier for such purpose so as to deliver said potatoes without damage at the point of destination.

The complaint then alleges that in this case such low temperatures were encountered that due care and caution upon the part of the defendant required that artificial heat should have been supplied to prevent the freezing of the

potatoes, but that the defendant wholly neglected to furnish such artificial heat and thus negligently permitted a large portion of such potatoes to freeze, for which damages are asked.

Demurrer was filed against the complaint upon the ground chiefly that it did not state facts sufficient in law to constitute a cause of action, and specifically:

"Because the complaint shows that the shipment in each of said causes of action was in transit in interstate commerce and moved under contract, under which circumstances the federal statutes require that the rights of both plaintiff and defendant be determined by the contract and the tariffs in force at the time, and not otherwise; and the complaint fails to set forth any violation of the contracts or the tariffs applicable to such shipments; because the matters of which complaint is made are that defendant failed to provide artificial heat in violation of an alleged common law duty, but said complaint as to each of said causes of action fails to allege that the tariffs, contracts, rules and regulations made by the parties or promulgated by the Interstate Commerce Commission, or ratified by the Commission, provided for or imposed any duty in regard to furnishing artificial heat."

This demurrer was overruled.

The answer admits the shipment of the potatoes as alleged and sets forth the bill of lading. The Interstate Commerce Act is then pleaded together with supplemental and amendatory acts thereto and tariffs and regulations thereunder, provided by the Interstate Commerce Commission; alleges compliance with all such acts and regulations, and that the rates and regulations relating to the particular transaction were in accord with the Interstate Commerce Commission rules.

It also pleads Western Classification 53 by that body, and Rule 30 thereunder, providing:

"that the ratings provided for freight in carloads do not obligate the carrier to furnish heated cars, nor to maintain heat in cars for freight requiring such protection except

under such conditions which the carrier's tariffs provide, and that stoves used in cars and the fittings and fuel therefor must be furnished by the shipper, and that the stoves must be securely fastened and piped and arranged in certain manner described, and that the shipper must provide attendants to care for the fire, and that the carrier will pass a man free, one way, for the purpose of attending to the fire. That said Western Classification 53 sets forth at pages 87 to 90 the standard bill of lading referred to."

It is further alleged:

"That said Southwestern Lines' Classification, Exceptions, etc., No. 1-F, provides in item 36, page 52, that during October, November, December, January, February, March, and April, when in order to protect perishable freight from frost it becomes necessary to provide stoves and fires in cars containing potatoes and vegetables, caretakers' transportation will be furnished messenger actually in charge of and accompanying shipments from point of origin to points specified in the tariff, subject to the provisions that the car is protected by stove and fire, and that the caretaker is passed free in one direction, and under certain conditions one man will be returned. That said tariff provides in item 580, page 101, that stoves used to protect potatoes from frost may be handled free when accompanying the original shipment of potatoes provided the shipper at point of origin gives the carrier shipping instructions in the form of a bill of lading consigning such property to the consignee of the potatoes, and in the event that this is not done, the rate on the potatoes will apply to the stoves. And further provides that stoves or heaters to protect from frost will be returned free under the conditions and restrictions stated."

It is further alleged that said shipments were made under the said standard bill of lading and under such classifications; that said acts of Congress and rules, regulations and tariffs provided thereunder constitute the sole agreement under which the defendant received and transported the shipments; that plaintiffs did not furnish stoves, fuel or

fittings for furnishing heat, nor an attendant as so provided, but on the contrary, plaintiff directed that said potatoes be transported under standard ventilation, and that standard ventilation does not require nor involve artificial heat, and therefore it was not the duty of the defendant to furnish artificial heat; that the defendant followed and carried out its said specific instructions and performed the services required of it by said contract and said laws, rules, regulations and tariffs concerning the same.

The replication admits the classifications and rules pleaded, but alleged that these provisions when considered in their entirety are directly "discriminating in favor of the larger shipper, and which provision as to all interstate shipments was contrary to the letter and spirit of the interstate commerce law referred to, and was illegal, null and void and of no effect whatsoever, whether filed and accepted by the Interstate Commerce Commission or not, and that none of said provisions in any manner relieved the defendant of liability for its negligence."

This allegation was ordered by the court to be stricken from the replication. Allegations of like effect in an amended replication were likewise ordered to be stricken.

The court then sustained a motion of the defendant for judgment on the pleadings, and judgment was rendered for the defendant accordingly.

The only question to be determined is whether or not under the facts and circumstances pleaded there was such a duty resting upon the defendant carrier as will create a common law liability.

It is clear that the only duty charged is failure to furnish heat. This was the issue involved in the motion to strike portions of the replication and the amended replication, as is case of judgment on the pleadings.

That the statutes and regulations and classifications approved by the Interstate Commerce Commission for shipments under the standard bill of lading impose no such duty is apparent.

It was not within the power of the court in this case to

determine the validity of such regulations. The shipper has the right in any appropriate proceeding to attack the rate or classification, and if either or both are held to be unreasonable may secure relief either by reparation order of the Commission, or by suit in court. But so long as such rate, regulation or classification remains operative it is binding upon the shipper and carrier alike and is to be enforced by the courts in fixing the liability of the parties. *Great Northern Ry. Co. v. O'Connor,* 232 U. S. 515, 34 Sup. Ct. 380, 58 L. Ed. 703.

The liability of a common carrier in case of an interstate shipment in view of the legislation of the United States Congress upon that subject is quite fully discussed and defined in *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257. It was there said:

"What is the liability imposed upon the carrier? It is a liability to any holder of the bill of lading which the primary carrier is required to issue 'for any loss, damage or injury to such property caused by it,' or by any connecting carrier to whom the goods are delivered. The suggestion that an absolute liability exists for every loss, damage or injury, from any and every cause, would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage though due to uncontrollable forces. That this was the intent of Congress is not conceivable. To give such emphasis to the words 'any loss or damage,' would be to ignore the qualifying words, 'caused by it.' The liability thus imposed is limited to 'any loss, injury or damage caused by it or a succeeding carrier to whom the property may be delivered,' and plainly implies a liability for some default in its common law duty as a common carrier."

It may be noted that federal legislation upon the question of contracts for interstate shipments supersedes any legislative policy of the states that may have been enacted upon that subject. In the case of *Express Co. v. Croninger, supra,* it was said:

"That the legislation supersedes all the regulations and

policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the state upon the subject of such contracts. But when Congress acted in such a way as to manifest a, purpose to exercise its conceded authority, the regulating power of the state ceased to exist. *Northern Pacific Ry. v. State of Washington,* 222 U. S. 370; *Southern Railway v. Reid,* 222 U. S. 424; *Mondou v. Railroad,* 223 U. S. 1."

It is the rule of the common law that a carrier is not liable for losses or injuries resulting from the inherent nature of the goods, which would not have been prevented by the exercise of ordinary care upon its part, or for loss or injury to goods caused by an inherent defect in the goods themselves, the existence of which was unknown both to the shipper and the carrier. Under this rule it has been held that the freezing of potatoes by a carrier will be held to be caused by the nature of the property, so as to exempt him from liability, provided he has been guilty of no previous negligence or misconduct which can be considered the proximate cause of injury. Moore on Carriers, 2nd Ed., Vol. 1, page 336.

In the case at bar, the plaintiff knew that he was making the shipment during one of the months of the year named in the contract of shipment in which the carrier agreed to permit the use of stoves and the carriage of an attendant to keep up the fires for the furnishing of heat to prevent the very injury complained of, but elected not to do so and to rely upon the packing of the potatoes in straw for protection.

The principle of law as announced by the federal courts is quite well stated in the case of *The Prussia,* 88 Fed. 531,

affirmed by the Supreme Court in 174 U. S. 803, 19 Sup. Ct. 885, 43 L. Ed. 1188. It was there said:

"It may very well be that whatever has a tendency to be injured by heat or by cold should be assigned to a place, in the distribution of the cargo, where its disposition would not be excited; but this would not require the carrier to create an artificial climate adapted to the preservation of goods, and to .warrant that the heat or cold thus furnished should be unvarying and efficient. Such an obligation upon a common carrier never existed, and there is no judicial suggestion of its propriety. Assume, then, that a carrier undertakes to add the business of cold storage to his regular occupation. Here is a duty not imposed by law, a duty totally unknown to the peculiar obligations of common carriers. The principle which imposes the obligation of an insurer upon a common carrier has no relation to it. Dressed meat has a tendency to decay. It is the primary duty of the shipper to make such provisions as shall arrest such tendency or take the risk of the tendency. It is the primary duty of a common carrier, to the extent above stated, to introduce or to permit the introduction of no agency which will excite or develop such tendency. Aside from this he takes no risk. If the carrier undertakes the duty of the shipper, and thereby relieves the latter, the obligation must rest entirely upon contract, as the obligation of a common carrier does not require him to do so. This contract is quite collateral to the obligation of a common carrier, and hence may impose such full or qualified obligations upon the bailee as the parties to it determine."

Nor do we find the view of the State courts to be materially different. In *McGovern v. Ann Arbor R. R. Co.*, 165 Wis. 525, 162 N. W. 668, the facts were very similar to those involved in the case at bar. The opinion in that case closed with the following:

"The shipper did not choose to put a stove in the car under the conditions offered, but decided (by accepting the bill of lading) to assume the risks incident to an ordinary

and expeditious transit of the car to its destination, one of the most obvious of which was the risk of freezing. The car went through expeditiously and on schedule time. The damage resulted not from delay nor from any act or omission of the defendant, but from the operation of a cause beyond the control of either party. In the published tariff of the defendant there is no provision for furnishing of heat in the transportation of vegetables or fruit; the rule hereinbefore referred to authorizing the shipper to furnish a man and stove is the only provision on the subject contained in the tariff."

In *Swetland v. Railroad*, 102 Mass. 276, the question was as to the negligence of the carrier in failing to furnish heat or otherwise prevent freezing. The court stated that there was no evidence of negligent delay, and continued:

"Nor is it contended that they expressly agreed to do anything to prevent the apples from freezing. At that season of the year (December 7) such property would be exposed to some risk of freezing if there should be a change of weather and any unusual detention of the train. But it is not contended that this was the risk of the carrier if he was guilty of no negligence."

In *Schwartz & Co. v. Erie R. R. Co.*, 128 Ky. 22, 15 L. R. A. (N. S.) 801, 106 S. W. 1188, the court said:

"Where the injury to the goods is due to their own inherent nature and from natural causes, such as freezing, without fault on the part of the carrier, he is not responsible. 6 Cyc. 381; *Wolf v. Express Co.*, 43 Mo. 421, 97 Am. Dec. 406; *McGraw v. Railroad Co.*, 18 W. Va. 361, 41 Am. Rep. 696; 5 Thompson on Negligence, Sec. 6456."

We find the trend of the decisions of both Federal and State courts, rendered since the enactment of the Interstate Commerce law, to be in harmony with the views herein expressed.

The judgment is affirmed.

MR. JUSTICE DENISON and MR. JUSTICE ALLEN concur.