## No. 15,971.

WATSON BROS. TRANSPORTATION CO. *v.* DOMENICO, DOING
BUSINESS AS DENVER VEGETABLE GARDENS.

(194 P. [2d] 323)

Decided April 19, 1948.   Rehearing denied June 7, 1948.

134

Mr. Louis A. Hellerstein, Mr. W. D. Calderwood, for plaintiff in error.

Mr. Truman A. Stockton, Jr., for defendant in error.

*En Banc.*

Mr. Justice Hays delivered the opinion of the court.

This is an action to recover for damages to a truckload of eggplant allegedly caused by overheating in transit. The parties are here in reverse order of their appearance in the trial court and we will hereinafter refer to them as plaintiff and defendant. The case was tried to the court without a jury and judgment entered in favor of the plaintiff and against defendant. Defendant asks for reversal of the judgment upon five separate grounds. Our disposition of the case renders it unnecessary to separately pass upon the points raised. It is sufficient to say that defendant contends that the loss herein was occasioned by the inherent nature of the eggplant and not because of any negligence on its part; that no duty rested upon it by law or contract to furnish refrigeration to prevent spoilage of the eggplant.

The trial court found upon sufficient evidence that the eggplant was received by the defendant, a common carrier, at Kansas City, Missouri, September 4, 1945, in good condition; that it delivered same in Denver, September 6, 1945, in bad condition, and that the consequent loss was caused by overheating. The above circumstances are sufficient to establish a prima facie case in favor of plaintiff and create a rebuttable presumption of negligence of defendant, casting upon the latter the

duty of absolving itself from liability by showing that the damage was due to no fault or negligence on its part. *Union Pacific Ry. Co. v. Stupeck*, 50 Colo. 151, 114 Pac. 646; *Denver & R. G. R. R. Co. v. Peterson Grocery Co.*, 59 Colo. 125, 147 Pac. 663.

Defendant introduced no evidence to overcome the above presumption of negligence, and failed to show any effort to keep down excessive heat or prevent the loss. It thereby permitted the introduction of an agency to excite and develop the natural tendency of the eggplant to spoil and failed in its common-law duty to protect the property.

It is not necessary for us to decide whether or not defendant was required by law or contract to furnish refrigeration, or to speculate upon the question as to whether such refrigeration was necessary to protect the shipment. In this connection, however, defendant's expert witness from Colorado State College of Agriculture and Mechanic Arts testified that refrigeration under the circumstances here involved was unnecessary.

■ It was the common-law duty of defendant to exercise that degree of care in the transportation of goods which a reasonably prudent person would employ under like circumstances in regard to similar goods of his own. In the instant case, as above stated, no care whatsoever was exercised to protect the shipment or to arrest its natural tendency to decay. The undisputed evidence was that the truck was not ventilated and that steam poured out thereof when the doors were opened in Denver. There is no evidence that the doors of the truck were opened between the time of loading of the eggplant and the delivery thereof, a period of approximately two days, despite the fact, as defendant's expert witness testified, that aeration and "complete movement of air is necessary" to protect the shipment.

The perishable nature of the shipment does not relieve the carrier from the primary duty he owes the shipper to protect the goods. On the contrary there was

imposed upon the defendant the obligation to exercise a higher degree of care. In this connection it was said in *The Prussia,* 88 Fed. 531: "Dressed meat has a tendency to decay. It is the primary duty of the shipper to make such provisions as shall arrest such tendency, or take the risk of the tendency. It is the primary duty of a common carrier, to the extent above stated, to introduce or to permit the introduction of no agency which' will excite or develop such tendency." The carrier's duty to protect perishable goods is well stated in 9 Am. Jur., Carriers, §§337, 339, 481.

In *Merchants' Dispatch & Transfer Co. v. Cornforth,* 3 Colo. 280, 282, we said that the acceptance of perishable goods for transportation "clearly implies that he [carrier] will ship them in such cars and exercise such diligence as may be reasonably necessary for their safe passage to their destination. Having failed to do this he cannot escape liability," and we quoted from *Wing v. New York & Erie R.R. Co.,* 1 Hilt. 235, as follows: "The fact that they were perishable imposed upon the defendant more than ordinary care and diligence * * *. The intensity of the cold created also the obligation of additional vigilance, and what was usual, was not the consideration. What was necessary to be done, under all the circumstances, was the true criterion."

The case of *Fort v. Denver & R. G. R. R. Co.,* 69 Colo. 441, 195 Pac. 109, cited by defendant in support of its contention that a carrier is not liable for injury resulting from the inherent nature of the goods, does not apply in the instant case for the reason that the loss herein was not occasioned by the inherent nature of the goods, but by the negligence of the defendant. In the Fort case we said: "It is the rule of the common law that a carrier is not liable for losses or injuries resulting from the inherent nature of the goods which would not have been prevented by the exercise of ordinary care upon its part."

The recent case of *Denver-Chicago Trucking Co. v.*

*Oyama,* 117 Colo. 359, 188 P. (2d) 442, is also cited by defendant in support of his contention of nonliability because of the inherent nature of the goods. In that case a claim was made for damages to a shipment of ginger root caused by freezing in transit. The defendant in its answer alleged that it was guilty of no act of negligence in the transportation of such goods. Plaintiff by his motion for summary judgment admitted the allegation that there was no negligence on the part of the defendant. In such circumstances the carrier was not liable.

Justice Luxford, speaking for the court in that case, was careful to point out that there was no liability "where there is no defect in the service" or "if he [carrier] was guilty of no negligence" or "provided he [carrier] has been guilty of no previous negligence or misconduct which can be considered the proximate cause of injury."

It is thus apparent that the exemption of the carrier from liability on the ground of inherent nature of the goods is at all times predicated upon the absence of negligence on the part of the carrier. The defendant in this case, we stated above, by reason of the prima facie showing of the plaintiff, was presumptively guilty of negligence and it made no effort to overcome such presumption. It, therefore, follows that it is liable for the loss occasioned by its neglect.

The only remaining question presented herein relates to the measure of damages. Section 20, chapter 1, Title 49, of the Interstate Commerce Act, provides that the carrier shall be liable "for the full actual loss, damage, or injury to such property caused by it. * * * "

The trial court found: "The evidence is that this particular shipment of eggplant had already been sold, that because of its damaged condition it could not be sold under the same terms, that some of it was sold at less profit and some of it was not sold at all. The damage is the difference between what it could have been sold for, had it not been damaged, and what it was sold for."

We conclude that the amount allowed by the trial court represents the actual loss sustained, and we find no error in the method it used in arriving at such amount.

The judgment is therefore affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE LUXFORD dissent.