**FEINBERG KOSHER SAUSAGE CO. v. WATSON BROS. TRANSP. CO., Inc.**

Civ. A. No. 3094.

United States District Court
D. Minnesota, Fourth Division.

March 14, 1951.

Robert A. Levitt, of Minneapolis, Minn. (Lester L. Sokol, of Minneapolis, Minn., of counsel) for plaintiff.

Donald · A. Morken and Stinchfield, Mackall, Crounse and Moore, of Minneapolis, Minn., for defendant.

NORDBYE, Chief Judge.

This action came on for trial before the Court without a jury.

On May 2, 1949, and May 6, 1949, plaintiff shipped some sausage and wieners from Minneapolis via defendant's truck line to Swift & Company in Los Angeles, California. When the shipment was inspected by Swift & Company after arrival in Los Angeles, the products were spoiled through lack of refrigeration. Although the shipment was under refrigeration when delivered to Swift & Company, it had been afforded no protection against the heat when it left Minneapolis. The product was in good condition when turned over to defendant by plaintiff for transportation. And the new cardboard cartons in which the products were shipped were marked "From Feinberg Kosher Sausage Co. Perishable. Keep Cool and Dry." The bill of lading provided, "The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof except as hereinafter provided."

The shipments moved under a tariff which provided in part, "Except as otherwise provided in individual items, rates named in tariffs made subject to this tariff include the cost of protecting shipments from damages by heat or cold, providing that the shipper states specifically on the bill of lading that such protection is required."

Plaintiff orally requested, and was assured of, refrigeration protection for shipments of sausage and wieners by one of the defendant's soliciting freight agents, but did not state on the bill of lading that the shipment in question required protection. Plaintiff now seeks damages from defendant for loss allegedly suffered as a result of defendant's alleged failure to protect the shipment against the heat during transit. Defendant contends that it was not required to furnish refrigeration under the terms of its contract with plaintiff and that, in any event, defendant used all the care required of it. These contentions are the principal issues presented for determination.

A common carrier of perishable goods is charged with the common law duty to exercise ordinary care to protect the goods from injury while the goods is in the carrier's charge. This includes the duty to prevent decay as well as other damage. What the duty is in each case is determined from the particular circumstances and conditions, the nature of the goods, obligations imposed by customs and usages of the particular business, and the contract of shipment. Brennisen v. Penn. R. R. Co., 1907, 100 Minn. 102, 110 N.W. 362.

Here, the goods were perishable, and the written contract between plaintiff and defendant consisted really of the bill of lading and the above quoted tariff. The bill of lading provides that the carrier in possession of the goods is liable as at common law for loss to the goods unless otherwise indicated in the bill of lading. Defendant therefore is liable to use ordinary care as at common law, for no provision in the bill of lading relieves defendant of

that obligation. In fact, other provisions of the bill of lading expressly provide that defendant is liable for its negligent delays and for damage not caused by a defect or vice in the property transported. These provisions are consistent with retaining, not discarding, the carrier's common law liability and duties, and the tariff to which defendant looks for exemption from its duties and resulting common law liability must be construed accordingly.

The tariff, literally construed, provides that the rate shall govern for protected as well as for unprotected shipments if the shipper expressly requests the protection. The tariff does not state, as defendant appears to urge, that protection will be given to shipments only if the shipper requests protection. And the defendant here has not so construed the tariff in practice. For defendant has protected shipments made under this tariff by refrigeration even when the shipper has not requested the protection. The defendant's judgment as to need of refrigeration appears to have been the determining factor. The defendant in practice, therefore, has conducted itself as if it owed at least the common law duty under the tariff. Moreover, the subject of the tariff concerns the amount of the rate to be charged, not, as defendant assumes, what must be done in order to obtain protection of the perishable goods shipped thereunder. To sustain defendant's contention that the shipper is required by the tariff to indicate if refrigeration or other protection is desired, and that defendant is relieved from liability if such a request is not made by the shipper would ignore the literal words and the subject of the tariff and would overlook the carrier's common law duty which is preserved by the bill of lading. That the carrier cannot contract against its own negligence in carrying goods is too well settled for dispute. Defendant's interpretation ignores this rule. For defendant's interpretation would permit the carrier to shift to the shipper the duty to determine if protection was needed. In essence, that duty is a part of the carrier's duty to use ordinary care, and a contract against the existence of such a duty would be a contract against the duty to use ordinary care as required by the common law. Defendant cites no authority which sustains its broad interpretation of a tariff which by precedent must be construed strictly. The contract between the parties does not relieve defendant from liability merely because plaintiff herein failed to ask that the shipment be protected from heat.

The real question here is whether defendant exercised the degree of care required of it as a carrier. Defendant argues that plaintiff's failure to request refrigeration on the bill of lading constituted an instruction not to use refrigeration or, at least, an instruction that refrigeration was not required.

If the shipper gives instructions as to the protective measures which should be taken to preserve the product, the carrier is completely protected from liability for loss if it follows the shipper's instructions. Sutton v. Minneapolis & St. L. Ry. Co., 1946, 222 Minn. 233, 23 N.W.2d 561. But mere silence, standing alone, cannot be held to constitute an affirmative instruction not to refrigerate or an instruction that refrigeration was not needed. To change silence into an affirmative statement requires circumstances which establish that intent. Those circumstances are lacking here. The tariff to which defendant points was applied by defendant to protected as well as unprotected shipments. Both types of shipment took the same rate. Plaintiff's adoption of the rate, standing alone, without indication of whether protection was required, can indicate an oversight or indifference concerning refrigeration. It does not itself constitute an affirmative instruction as defendant urges. To adopt defendant's position would change the ambiguous into a positive, unequivocal statement without circumstances to support the change. That defendant never considered silence as an instruction is evident from defendant's custom under this tariff to ice some shipments even if no request is made by the shipper for such icing. Even in the instant case, the cargo was refrigerated for at least part of the distance be-

tween Minneapolis and Swift & Company's plant at Los Angeles.

Plaintiff's silence is relevant here not to the question of instructions from plaintiff to defendant· concerning the need of refrigeration of the cargo, but only as a factor to be considered in determining if defendant used the care required of it as a common carrier of perishable merchandise. It only is a fact to consider in conjunction with, and in light of, all the facts and circumstances.

The sausage in question was delivered to defendant by plaintiff in good condition. When Swift & Company inspected the goods after its arrival in Los Angeles, the sausage was in a damaged condition. The burden therefore is upon the defendant to establish that the damaged condition was not caused by any failure by it to use the required degree of care in shipment. Brennisen v. Penn. R. R. Co., 100 Minn. 102, 110 N.W. 362; Watson Bros. Transportation Co. v. Domenice, 118 Colo. 133, 194 P.2d 323.

The evidence shows that this meat was shipped in May. During the time it was in transit the temperatures to which it was subjected exceeded 90 degrees Fahrenheit at some points. Sausage is a perishable product, and it spoils in warm weather more easily than in cold. The boxes in which the products were shipped were new boxes plainly marked with instructions to keep the products cool. Defendant knew what was in the boxes. And sausage and wieners are subject by nature to deterioration in warm weather unless, as the boxes indicated, they were kept cool and dry. Defendant points out that sausage often is not kept under constant refrigeration ·in butcher shops. But defendant does not show the length of time such products may remain unprotected from the heat nor what temperatures will cause the product to spoil. Wieners, pastrami, and other types of sausage like that involved here are meat products and are perishable. The evidence sustains such a finding. Defendant's normal practice was to refrigerate perishable products even in the absence of bill of lading instructions.

That defendant should have recognized protection was necessary for the instant products in warm temperatures is evident from the fact that the shipment actually was refrigerated by defendant for at least part of its journey to Swift & Company in Los Angeles. The shipment was packed in dry ice when delivered to Swift's. Such situation indicates that defendant did not fail to refrigerate merely because the bill of lading was silent concerning the need for refrigeration. That defendant exercised its own judgment concerning the need for refrigeration is sustained by the evidence.

The record does not establish where the product was placed under refrigeration. It is clear, however, that the shipment was not refrigerated when it left Minneapolis. And the testimony adequately established that the product should be protected against the heat. Defendant contends that the protection against the heat commenced at Denver. Plaintiff contends that it commenced at defendant's docks at Los Angeles. But regardless of where it began, the reasonable conclusion is that the product spoiled while in defendant's possession, and that if proper refrigeration had been applied by defendant, the shipment would not have spoiled. Defendant suggests that the product may have spoiled after delivery to Swift & Company but before inspection by that company. But the evidence shows that Swift kept the product under refrigeration. Defendant does not show that a lack of refrigeration by Swift was the cause of the spoilage.

Defendant had transported merchandise for plaintiff previously without refrigeration. But the record does not show that the temperatures prevailing at the time of the instant shipment also prevailed on the previous shipments. Whether defendant used the required degree of care depends upon the facts which existed during the given trip, not upon those existing during a previous trip. The time of year in which the previous shipments were made indicates in itself that lower temperatures prevailed then.

Under all the facts and circumstances of this case, therefore, it seems reasonable

to conclude that defendant has failed to sustain its burden in this action. The record establishes that defendant failed to use the required degree of care in fulfillment of its common carrier obligations to plaintiff herein, and such failure was the proximate cause of this loss. That is, defendant's failure to refrigerate the products in question caused them to spoil.

The parties have stipulated that the loss suffered by plaintiff as a result of the spoilage was $1,516.25. Judgment for that amount therefore should be entered in favor of plaintiff.

Findings of fact and conclusions of law in harmony herewith may be presented by plaintiff. An exception is reserved to defendant.