MOBILE & O. R. CO. *v.* JENSEN.

(Division B. Feb. 29, 1932. Suggestion of Error Overruled April 11, 1932.)

[139 So. 840.   No. 29830.]

742

Carl **Fox**, of St. Louis, Mo., and **W. G. Roberds**, and **Roberds & Malone**, of West Point, for appellant.

Chas. Strong, of Macon, for appellee.

7.44

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action in the circuit court of Noxubee county against the appellant to recover damages to two hundred twenty-five colonies of bees shipped by appellee from Bogalusa, Louisiana, and consigned to himself at Macon, in this state, and delivered at their destination by appellant, which damages were alleged to have been caused by appellant in failing to notify

appellee at once of the arrival of the bees at their destination according to a verbal agreement to that effect had between the parties. There was a trial resulting in a verdict and judgment in the sum of three hundred seventy-two dollars and five cents, from which judgment appellant prosecutes this appeal.

We have reached the conclusion that appellant was entitled to a directed verdict in its favor, which was requested and refused by the court, and therefore in stating the case we shall set out every material fact favorable to appellee which the evidence either establishes directly or by reasonable inference.

Appellee either had or was establishing an apiary in Noxubee county in this state. He had an apiary near Bogalusa, Louisiana. He desired to close his apiary at Bogalusa and move his bees to Macon. On the 19th of March, 1929, the appellee, under a uniform interstate bill of lading, shipped the bees by railroad freight from Bogalusa, Louisiana, by way of Meridian in this state, and from there over appellant's line of railroad to Macon, consigned to himself. The shipment consisted of two hundred twenty-five colonies of bees. Some days before the bees were shipped appellee saw appellant's agent at Macon and informed him of the intended shipment. The appellee impressed on the agent the necessity of the immediate unloading on the arrival of the bees. He explained to him that the bees while moving in transit would not suffer because the movement of the train would cause the air to sufficiently circulate among them to keep them alive, but that it would not do to permit them to stand in loaded cars for any considerable length of time for there would be a want of sufficient air circulating among them, which would result in their damage or destruction. In view of these facts appellee requested the appellant's agent at Macon to notify him at once on the arrival of the bees, which the agent agreed to do.

The appellant's agent denied making any such agreement, but for the purposes of this decision appellee's testimony to that effect will be taken as true. Appellee lived about a mile from Crawford, a station on the appellant's line of railroad. Crawford is about twenty miles northwest of Macon. The bees arrived in Macon at five twenty-two on the morning of March 21, 1929. About eleven o'clock of the same morning the appellant's agent in Macon deposited in the mail at Macon a written notice of the arrival of the bees addressed to appellee, the consignee, at Macon, that being the address in the bill of lading. The appellee was expecting the arrival of the bees on the day they did arrive. Before he received the written notice he had appellant's agent at Crawford call up its agent at Macon and ask if the bees had arrived. Appellant's agent at Macon informed the agent at Crawford that they had arrived. This occurred about four-thirty P. M. the same day as the arrival of the bees. So the undisputed evidence was that the bees arrived at their destination at five twenty-two A. M. on March 21, 1929, and about four-thirty P. M. of the same day appellee had notice of their arrival. Appellee and his helpers did not go to Macon and unload the bees on the afternoon of the notice of their arrival, but went the next morning, arriving about seven o'clock, and began to unload the bees around nine or ten o'clock in the morning. However, the evidence for the appellee, which was undisputed, showed that the bees could not have suffered any injury on account of remaining in the cars the latter part of the afternoon and during the night; that the injury occurred during the late morning and early afternoon when the sun was shining and no air was circulating among the bees. The evidence showed that when the bees were unloaded about thirty colonies were dead and about ninety colonies badly injured.

The question is whether or not the verbal agreement between appellee and the appellant's agent at Macon for

immediate notice of the arrival of the bees was a valid contract binding on appellant. As above stated, the bees were shipped from Bogalusa, Louisiana, to Macon in this state under a uniform interstate bill of lading. The bill of lading contained this, among other provisions: ''Received subject to the classification and tariffs in effect on the date of the receipt by the carrier of the property described in the original bill of lading at Bogalusa, Louisiana, March 19, 1929.'' There is no notation on the bill of lading that appellant's agent at Macon should give appellee immediate notice of the arrival of the bees at their destination. The bill of lading was made an exhibit to appellee's declaration.

On the trial of the case appellant introduced in evidence a certified copy of the tariffs, rules, and regulations of the interstate commerce commission governing interstate shipments of this character. The duties of a delivering railroad with reference to giving the consignee notice of the arrival of a shipment are contained in section A, under the caption ''National Car Demurrage Rules and Charges,'' in this language: ''Section A. . . . Notice of arrival shall be sent or given consignee or party entitled to receive same by this railroad's agent in writing, or, in lieu thereof, as otherwise agreed to in writing by this railroad and consignee, within twenty-four hours after arrival, of car and billing at destination, such notice to contain car initials and number, point of shipment, contents, and if transferred in transit, the initials and number of original car. When address of consignee does not appear on billing, and is unknown, the notice of arrival must be deposited in United States mail enclosed in a stamped envelope bearing return address, same to be preserved on file, if returned. An impression copy shall be retained, and when notice is sent or given on a postal card the impression shall be both sides. . . . In case a car subject to Rule 3, Section C, Paragraph 1, is not placed on public delivery track

within twenty-four hours after notice of arrival has been sent or given, notice of placement shall be sent or given to consignee.''

Appellant's contention is that this regulation is controlling and that any agreement made between the carrier and the shipper not authorized by the regulation is void. It will be noted that the regulation expressly provides that notice to the consignee of the arrival of a shipment must be *in writing* ''or, in lieu thereof, *as otherwise agreed to in writing* by this railroad and consignee, within twenty-four hours after arrival.'' (Italics ours.) The appellee takes the position that this regulation is a mere demurrage rule for the purpose of fixing demurrage charges, and has no application to special agreements as to notice between the carrier and the consignee on the arrival of the shipment.

We are of opinion from its plain language that the regulation covers the entire duties of the carrier with reference to notice to the consignees of the arrival of shipments, and that in adopting the regulation the interstate commerce commission did not have in mind alone rules for determining demurrage charges, but also rules for the speedy unloading of shipments of freight by consignees. The regulation makes provision for the quick delivery of highly perishable freight, for it provides that by agreement in writing between the carrier and the shipper they may prescribe the time within which notice must be given the consignee of the arrival of the shipment. In other words, the regulation provides that by written agreement the parties may stipulate that notice of the arrival of the shipment must be given the consignee within a shorter time than the twenty-four-hour period.

The tariffs, rules, and regulations adopted by the interstate commerce commission are controlling in all interstate shipments. Their purpose was to bring about uniformity and equality in rates, as well as in the rules,

regulations, and practices of the carriers. The cardinal purpose was to prevent discriminations and favoritism among shippers. The tariffs and rules and regulations of the interstate commerce commission have the effect of law and cannot be added to, altered, amended, or changed by any oral agreement. The contract between the shipper and the carrier is made up, not of the bill of lading alone, but of the bill of lading, plus the tariffs, schedules, and the other governing rules and regulations of the interstate commerce commission. Boston & M. R. R. v. Hooker, 233 U. S. 97, 34 S. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593; Atchison, T. & S. F. Ry. Co. v. Robinson, 233 U. S. 173, 34 S. Ct. 556, 58 L. Ed. 901; Southern R. Co. v. Prescott, 240 U. S. 632, 36 S. Ct. 469, 60 L. Ed. 836; Georgia, F. & A. Ry. Co. v. Blish Milling Co., 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948; Davis v. Cornwell, 264 U. S. 560, 44 S. Ct. 410, 68 L. Ed. 848; Davis v. Henderson, 266 U. S. 92, 45 S. Ct. 24, 69 L. Ed. 182; Louisville & N. R. Co. v. Chatters, 279 U. S. 320, 49 S. Ct. 329, 73 L. Ed. 711.

We hold, therefore, that the only way the shipper and carrier can provide for the giving of a shorter notice than the twenty-four-hour period is by written contract expressly providing for the shorter notice, and it appears that such a stipulation ought to be noted on the bill of lading, because the bill of lading is the contract of shipment between the parties.

The appellee objected to the introduction of the tariffs and rules of the interstate commerce commission. They were admitted in evidence over appellee's objection. Appellee argues that they were not properly proven. We do not understand from appellee's brief the exact ground upon which it is claimed the tariffs and rules are not legally proven. Section 1583, Code of 1930, provides that copies of records, books, and files belonging to offices of the United States, certified by the officer having charge thereof, shall be competent evidence in all cases where

the originals or sworn copies could be admitted. The copy introduced was properly certified to by the secretary of the interstate commerce commission. We do not think there is any merit in appellee's contention.

Reversed, and judgment here for the appellant.