JOHNSON MOTOR TRANSPORT
v.
The UNITED STATES.
No. 507–52.

United States Court of Claims.
March 6, 1957.

Thomas P. Littlepage, Jr., Washington, D. C., for plaintiff.

Paris T. Houston, Washington, D. C., and Curtis L. Wagner, Jr., Knoxville, Tenn., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

PER CURIAM.

This case was referred by the court, pursuant to Rule 45(c), 28 U.S.C.A., to Mastin G. White, a commissioner of the

court, with directions to make findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed November 2, 1956. When more than 15 days elapsed after the filing of this report and neither party gave notice in writing of an intention to except to the commissioner's findings or recommendations, the defendant filed a motion for judgment in accordance with the recommendations of the commissioner. Since the court agrees with the recommendations and findings of the commissioner, as hereinafter set forth, it hereby adopts the same as the basis of its judgment in this case, and plaintiff's petition will be dismissed.

It is so ordered.

Opinion of the Commissioner.

The plaintiff, a motor common carrier in interstate commerce, sues to recover the sum of $2,796.10, representing the total amount of the plaintiff's charges on a number of freight shipments that the plaintiff transported for the defendant during the period 1947–1952.

It is conceded by the defendant that the plaintiff's charges were correct, and that they have not been paid.

The reason for the defendant's failure to pay the transportation charges mentioned above is that, when the plaintiff's bills covering the various shipments were submitted to the defendant, the latter set off against the amounts that were due the plaintiff a total of $2,796.10 in reimbursement of claims asserted by the defendant against the plaintiff because of the spoilage of three consignments of meat that had been transported by the plaintiff for the defendant in 1947.

Therefore, the real question to be decided in the present case is whether the plaintiff is liable to the defendant for the damages resulting from the spoilage of the meat. If the answer to this question is in the affirmative, the defendant's set-off was proper, and the plaintiff's petition should be dismissed. On the other hand, if the plaintiff is not liable for the damages resulting from the spoilage of the meat, then the defendant's setoff was improper, and the plaintiff is entitled to a judgment in the amount sought.

The meat referred to above was the property of the defendant. It was shipped under through bills of lading from the City of New York, New York, to Dow Field, a military installation maintained by the defendant at Bangor, Maine. Two of the shipments were made late in May of 1947, and the third shipment was made late in June or early in July of 1947. All the shipments were transported by the Malkin Motor Freight Company, as the initial carrier, from New York City to Boston, Massachusetts; and they were then transported by the Johnson Motor Transport (the plaintiff), as the terminal carrier, from Boston to Dow Field. Each of the May shipments was in transit for two days. The evidence does not show how long the third shipment was in transit, except that the period could not have exceeded 14 days.

In each instance, the meat was in good condition when it was received by the initial carrier.

Each of the bills of lading covering the meat shipments contained a notation directing that the meat be handled as follows:

"Load in Pre-cooled refrigerator truck and maintain a temperature sufficiently low to insure the arrival of the product to destination in good condition."

However, the three consignments of meat were not transported under refrigerated conditions, as directed by the bills of lading. In this connection, Rule 17(b) of Coordinated Freight Motor Classification MFICCA–60, which was applicable to the transactions with which we are concerned, provided that:

"Ratings provided on freight requiring protection from heat or cold do not obligate the carrier to provide refrigeration or heater service or trucks specifically equipped for such protection, except as otherwise specifically provided in carrier's tariffs."

The applicable tariffs of the Malkin Motor Freight Company and of the Johnson Motor Transport did not specifically provide for or offer service to protect shipments from heat or cold.

The evidence does not show what precautions, if any, were taken by the carriers in order to protect the three consignments of meat against deterioration while in transit.

When the consignments of meat arrived at Dow Field and were tendered for delivery by the terminal carrier, Johnson Motor Transport, the meat was spoiled. All three consignments were rejected by the defendant. The financial loss sustained by the defendant as a result of the spoilage of the meat amounted to a total of $2,796.10.

It is unknown whether the meat spoiled while it was in the possession of the Malkin Motor Freight Company (the initial carrier) or while it was in the possession of Johnson Motor Transport (the terminal carrier). This is unimportant, however, because if the defendant's claims for damages growing out of the spoilage of the three shipments of meat are valid, the defendant may, under section 20(11) of the Interstate Commerce Act,[1] assert such claims either against the initial carrier or against the terminal carrier, without ascertaining which of them was in possession of the meat at the time when it spoiled. The defendant has elected to take action against the terminal carrier, Johnson Motor Transport (the plaintiff), by setting off the total amount of the claims against sums otherwise due this carrier for transportation services.

■■ The first legal point to be considered relates to the failure of the carriers to comply with the notation on each bill of lading expressly directing that the meat should be transported in a refrigerator truck.

As a general proposition, the provisions of the bill of lading covering an interstate shipment constitute the contract between the carrier and the shipper, and both are required to comply strictly with the requirements of the bill of lading. Georgia, Florida & Alabama Railway Company v. Blish Milling Company, 1916, 241 U.S. 190, 197, 36 S.Ct. 541, 60 L.Ed. 948; Chesapeake & Ohio Railway v. Martin, 1931, 283 U.S. 209, 221–222, 51 S.Ct. 453, 75 L.Ed. 983. The responsibility assumed by the initial carrier under a through bill of lading is equally binding upon any other carrier that participates in the transportation of the goods under the bill of lading. Georgia, Florida & Alabama Railway Company v. Blish Milling Company, supra, 241 U.S. at pages 194–196, 36 S.Ct. at pages 543–544.

The plaintiff calls attention, however, to judicial statements indicating that the tariff of an interstate carrier will be treated as though it were a Federal statute binding upon both the carrier and the shipper, Bull S.S. Lines v. Thompson, 5 Cir., 1941, 123 F.2d 943, 944, certiorari denied 315 U.S. 816, 62 S.Ct. 805, 86 L. Ed. 1214; Jackson & Perkins Co. v. Mushroom Transportation Company, 1945, 351 Pa. 583, 41 A.2d 635, 636, certiorari denied 326 U.S. 733, 66 S.Ct. 42, 90 L.Ed. 427; Mobile & O. R. Co. v. Jensen, 1932, 162 Miss. 741, 139 So. 840, 842; Breazeale v. American Railway Express Company, 1931, 18 La.App. 59, 137 So. 585; that it would be unlawful discrimination for a common carrier in interstate commerce to render for one shipper any service not provided for in the carrier's tariff and made available to all shippers, Jackson & Perkins Co. v. Mushroom Transportation Company, supra, 41 A.2d at page 638; and that, in the event of a discrepancy between a provision in a bill of lading and a provision in a carrier's tariff, the latter governs, Breazeale v. American Railway Express Company, supra. The plaintiff's purpose in citing such statements is presumably to persuade the court that since the tariffs of the two carriers involved in the present case did not specifically provide for or offer

---

1. This statutory provision is codified as 49 U.S.C.A. § 20(11). It is made applicable to motor common carriers in interstate commerce by 49 U.S.C.A. § 319.

service to protect shipments from heat or cold, their promise to the defendant (arising from their acceptance of the meat shipments under the pertinent bills of lading) that they would transport the three consignments of meat in refrigerator trucks was beyond the scope of their legal authority and, therefore, was void.

■ As the carriers' tariffs in the present case did not provide for or offer service to protect shipments from heat or cold, it is clear that, when the consignments of meat were tendered to the carriers for transportation under bills of lading requiring that the meat be transported in refrigerator trucks, the carriers could properly have refused to accept the meat for transportation. R. C. A. Truck Lines v. Georgia Rug Mill, 1953, 88 Ga.App. 658, 77 S.E.2d 442, 444; see Watson Bros. Transportation Company v. Feinberg Kosher Sausage Company, 8 Cir., 1951, 193 F.2d 283, 287. In view of the carriers' privilege of refusal, it would seem unfair to permit them, after having accepted the shipments and agreed to transport the meat in refrigerator trucks, to avoid liability for breach of contract on the ground that the defendant should not have placed any reliance on their promise because their commitment to transport the meat in refrigerator trucks was beyond the scope of their tariff provisions.

It is unnecessary, however, to decide the question whether the carriers are or are not liable to the defendant for breach of contract, since the case can be disposed of on another basis.

■ Apart from the scope of the contractual obligation assumed by an interstate common carrier for the protection of a cargo under the provisions of the pertinent bill of lading, the common law imposes upon the carrier a duty in relation to the protection of the cargo against loss or damage, and the carrier is liable in tort for a breach of that duty. Some judicial decisions say that an interstate common carrier is an "insurer" at common law with respect to any loss of or damage to the cargo,[2] except such as may be caused by the public enemy or an act of God, York Company v. Central Railroad, 1865, 3 Wall. 107, 112, 18 L.Ed. 170; Bank of Kentucky v. Adams Express Company, 1876, 93 U.S. 174, 181, 23 L.Ed. 872; Adams Express Company v. Croninger, 1913, 226 U.S. 491, 509, 33 S.Ct. 148, 57 L.Ed. 314, or such as may result from the inherent nature of the cargo, Secretary of Agriculture v. United States, 1956, 350 U.S. 162, 173, 76 S.Ct. 244, 100 L.Ed. 173; The Prussia, D.C.E.D.N.Y.1898, 88 F. 531, 532, affirmed 2 Cir., 1899, 93 F. 837, certiorari denied 174 U.S. 803, 19 S.Ct. 885, 43 L.Ed. 1188; Fort v. Denver & R. G. R. Co., 1921, 69 Colo. 441, 195 P. 109, 111; Jackson & Perkins Co. v. Mushroom Transportation Company, supra, 41 A.2d at page 636. In any event, it is clear that an interstate common carrier is at least under an inescapable minimum duty at common law to exercise reasonable care for the protection of the cargo, which duty cannot be abrogated by including in the bill of lading an express provision purporting to relieve the carrier of the obligation to exercise reasonable care, New York Central Railroad Company v. Lockwood, 1873, 17 Wall. 357, 384, 21 L.Ed. 627; Bank of Kentucky v. Adams Express Company, supra, 93 U.S. at page 181; Adams Express Company v. Croninger, supra, 226 U.S. at page 509, 33 S.Ct. at page 153, or by including a provision to that effect in the carrier's tariff, Secretary of Agriculture v. United States, supra, 350 U.S. at page 173, 76 S.Ct. at page 251. This duty necessarily requires the exercise by the carrier of reasonable care in order to prevent damage from happening to the cargo because of its inherent nature or because of an act of God or the public enemy.

■ In the present case, therefore, the carriers were at least under a duty to ex-

2. The rationale of this rule is persuasively stated in Chicago & Eastern Illinois Railroad Company v. Collins Produce Company, 1919, 249 U.S. 186, 192–193, 39 S.Ct. 189, 63 L.Ed. 552.

ercise reasonable care in order to protect the defendant's consignments of meat from the consequences of prolonged exposure to the natural temperature while the meat was in transit during warm-weather months. The extent of the protective precautions that the carriers were under a duty to take in order to meet the standard of reasonable care was, of course, affected by the perishable nature of the meat. The Prussia, supra, 88 F. at page 533; Watson Bros. Transportation Company v. Feinberg Kosher Sausage Company, supra, 193 F.2d at page 286; R. C. A. Truck Lines v. Georgia Rug Mill, supra, 77 S.E.2d at page 444; Sugar v. National Transit Corporation, 1948, 82 Ohio App. 439, 81 N.E. 2d 609, 612.

■ Where the evidence shows that a cargo was in good condition when it was entrusted to an interstate common carrier for transportation and that it was in a damaged condition when it arrived at the destination, this is sufficient to show, prima facie, that the carrier (or carriers, if two or more were involved in the transportation) failed to discharge the common law duty for the protection of the cargo. The liability of the carrier (or carriers) in tort for the damages is thereby established unless evidence is presented to show that, in fact, the common law duty for the protection of the cargo was discharged by the carrier (or carriers). Southern-Plaza Express v. Harville, 5 Cir., 1956, 233 F.2d 264, 267; Jackson & Perkins Co. v. Mushroom Transportation Company, supra, 41 A.2d at page 636; R. C. A. Truck Lines v. Georgia Rug Mill, supra, 77 S.E.2d at page 444; Sugar v. National Transit Corporation, supra, 81 N.E.2d at page 611. This is the situation that confronts the court in the present case.

■ The evidence shows that the three consignments of meat were in good condition when entrusted to the initial carrier in New York City for transportation, and that the meat was spoiled when it was tendered by the terminal carrier for delivery at Dow Field. There is nothing in the record to indicate what precautions, if any, were taken by the carriers to protect the meat against deterioration while in transit. For example, the evidence does not show what actions, if any, were taken by the carriers in order to deliver the perishable meat as expeditiously as possible. Hence, under the legal authorities previously mentioned, it must be held that the evidence shows, prima facie, that the carriers failed to discharge their common law duty for the protection of the meat against deterioration while it was in transit; and that, in the absence of a factual showing by the carriers to overcome the shipper's prima-facie case, liability on the part of the carriers in tort for the damages is established.

As previously stated, it is discretionary with the defendant whether its claims for damages will be asserted against the initial carrier, Malkin Motor Freight Company, or against the terminal carrier, Johnson Motor Transport; and the defendant has elected to assert its claims against Johnson Motor Transport, the plaintiff.

For the reasons outlined above, it seems clear that the defendant's action in setting off against the plaintiff's transportation charges the amounts of the defendant's damages from the spoilage of the three shipments of meat was proper. It necessarily follows, in my opinion, that the plaintiff is not entitled to recover and that its petition should be dismissed.