HAMILTON MANUFACTURING COM-
PANY, a corporation, Plaintiff,

v.

CHICAGO AND NORTHWESTERN
RAILWAY COMPANY, a corpo-
ration, Defendant.

No. 55–C–116.

United States District Court
E. D. Wisconsin.
Sept. 10, 1959.

A. F. Rankin, Manitowoc, Wis., for plaintiff.

Wickham, Borgelt, Skogstad & Powell, John J. Ottusch, Milwaukee, Wis., for defendant.

TEHAN, Chief Judge.

This is an action brought pursuant to Title 49 U.S.C.A. § 20(11) as amended, by the consignee of an interstate shipment of steel sheets to recover for rust damage allegedly caused by the negligence of the defendant, a common carrier, which transported the steel from Indiana Harbor, Indiana, to Two Rivers, Wisconsin. The action against Inland Steel Company, the consignor, has heretofore been dismissed without prejudice by the plaintiff.

On or about February 11, 1954, the plaintiff ordered and purchased from Inland Steel Company, approximately 120,-000 pounds of sheet steel for use by the plaintiff in its manufacturing business. The steel was loaded onto Penn. Car No. 84646 by Inland Steel employees on February 11, 1954. The building from which the steel was loaded had a temperature of about 50° to 60°, and the box car into which the steel was loaded was approximately 10° cooler. Before loading, the steel sheets were oiled and packaged in 10,000 pound banded "lifts" which were not wrapped. Each "lift" was inspected by an employee of Inland Steel, and the employee testified that they were in good condition when loaded.

After the loading was completed, the box car, which is stipulated to have been in satisfactory condition, was sealed by the shipper. The box car was then moved by the defendant from Indiana Harbor to Two Rivers, Wisconsin, leaving Indiana Harbor either on February 12th or 13th, 1954, and arriving at plain-

tiff's plant on February 17, 1954. The box car was not heated en route and no heating had been requested by the plaintiff. The seals placed upon the box car by the shipper were intact upon arrival in Two Rivers.

■ Plaintiff's employee, Harry Klein, inspected the shipment of steel on February 18, 1954, and testified that most of the sheets had an edging of rust approximately two to three inches wide. He thereupon reported this fact to Leo Sonntag, his superior, and Sonntag himself conducted an inspection and found rust damage along the edges, which he estimated to be one and one-half to two inches wide. Sonntag stated that it was not unusual to find some rust on steel shipped in box cars, but this shipment had an unusual amount of rust which rendered it unusable by the plaintiff without reconditioning. The damaged steel was sent to Milwaukee and Chicago for reconditioning, at a total cost to the plaintiff of $1720.56, which amount has been stipulated as reasonable. It has been further stipulated that the box car itself was inspected at Two Rivers and found to be in satisfactory condition. Since it appears that, in addition to the credible testimony of the Inland Steel inspector that the steel was in good condition when it left the plant, there has been a stipulation made that the rusting was the result of water settling on said steel from natural condensation out of the air by reason of natural changes in temperature during the transportation of said steel from Indiana Harbor, Indiana, to Two Rivers, Wisconsin, it clearly appears that the steel was in good condition when turned over to the carrier. It is just as clear from the undisputed evidence that the steel when delivered to plaintiff was in such badly rusted condition that it could not be used by the plaintiff without reconditioning. The plaintiff, therefore, having established by the preponderance of the evidence that the steel sheets involved herein were in good condition when delivered to the defendant and in a damaged condition when they arrived at their destination, has established its prima facie case.

■■ The parties are agreed that a railroad shipping goods in interstate commerce is subject to the provisions of § 20(11) of the Interstate Commerce Act. 49 U.S.C.A. § 20(11) as amended, which provides that any common carrier subject to the Act receiving property for interstate transportation,

> "* * * shall be liable * * for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States. * * *"

The defendant properly admits that this section codifies the common law rule making a railroad liable without proof of negligence for all damage to goods transported by it unless it affirmatively shows that the damage was occasioned by the shipper, acts of God, the public enemy, public authority, or the inherent vice or nature of the commodity, citing in this respect Chesapeake & Ohio Railway Co. v. Thompson Manufacturing Co., 1926, 270 U.S. 416, 46 S.Ct. 318, 70 L.Ed. 659; Adams Express Co. v. Croninger, 1913, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314; Secretary of Agriculture v. United States, 1956, 350 U.S. 162, 76 S.Ct. 244, 100 L.Ed. 173.

■ The defendant has not been successful in affirmatively showing that the damage was occasioned by the shipper, the court having heretofore found that the shipper was without fault; nor has the defendant made any effort to affirmatively show that the damage was occasioned by an act of God, a public enemy, or public authority. By elimination, therefore, the defendant's exoneration depends on whether it has affirmatively shown that the damage was caused solely by the inherent vice or nature of the goods shipped. It is not enough to show that an "inherent vice" was causal

without proving that the carrier used all reasonable care and precautions under the circumstances. The Court of Claims in the recent decision of Johnson Motor Transport v. United States, 1957, 149 F.Supp. 175, 137 Ct.Cl. 892, a case which involved the transportation of truckloads of meat, laid down the rule that this court believes should be followed here: (149 F.Supp. at page 180)

"Where the evidence shows that a cargo was in good condition when it was entrusted to an interstate common carrier for transportation and that it was in a damaged condition when it arrived at the destination, this is sufficient to show, prima facie, that the carrier (or carriers, if two or more were involved in the transportation) failed to discharge the common law duty for the protection of the cargo. The liability of the carrier (or carriers) in tort for the damages is thereby established unless evidence is presented to show that, in fact, the common law duty for the protection of the cargo was discharged by the carrier (or carriers). Southern-Plaza Express, Inc. v. Harville, 5 Cir., 1956, 233 F.2d 264, 267; Jackson & Perkins Co. v. Mushroom Transportation Co., supra, [351 Pa. 583], 41 A.2d [635], at page 636; R. C. A. Truck Lines v. Georgia Rug Mill, supra [88 Ga. App. 658], 77 S.E.2d [442], at page 444; Sugar v. National Transit Corporation, supra, [82 Ohio App. 439], 81 N.E.2d [609], at page 611. This is the situation that confronts the court in the present case."

"The evidence shows that the three consignments of meat were in good condition when entrusted to the initial carrier in New York City for transportation, and that the meat was spoiled when it was tendered by the terminal carrier for delivery at Dow Field. There is nothing in the record to indicate what precautions, if any, were taken by the carriers to protect the meat against deterioration while in transit. For example,

the evidence does not show what actions, if any, were taken by the carriers in order to deliver the perishable meat as expeditiously as possible. Hence, under the legal authorities previously mentioned, it must be held that the evidence shows, prima facie, that the carriers failed to discharge their common law duty for the protection of the meat against deterioration while it was in transit; and that, in the absence of a factual showing by the carriers to overcome the shipper's prima-facie case, liability on the part of the carriers in tort for the damages is established."

The defendant carrier herein, however, has introduced no evidence whatsoever on the point of the inherent vice or nature of the steel shipment. During the pretrial conference and later, by correspondence with the plaintiff, the defendant indicated it would call two named university professors to testify as experts on steel and its rusting qualities. For reasons known only to itself, it did not produce the witnesses. Instead, defendant has assumed the inherent vice of the shipment and has asked the court to take judicial notice of the uncertainties of the weather in the Middle West during February and the fact that water will condense on a colder object when it is exposed to warm moist air.

Faced with the burden of an affirmative showing the only facts made available to us by the defendant arise out of the stipulation that the box car itself was in good condition both at the time the goods were loaded and sealed and when they arrived and the seal was broken at plaintiff-consignee's plant, and that the rusting was caused by "natural condensation of water onto the steel, the result of natural weather conditions along the route." The defendant has provided no facts bearing on inherent nature or vice of this particular steel, the effect of the oil put on it for shipment, the significance of the 10° difference between consignor's warehouse and the box car, the weather conditions then obtaining and whether they were foreseeable, the actual train

550

movement itself with regard to reasonable expedition under the circumstances and other facts that would demonstrate that reasonable precautions were taken.

Having failed to acquit itself of its burden passing to it by the establishment of the facts by the plaintiff that the shipment was in good condition when entrusted to defendant's care and in a damaged condition on arrival it follows that liability on the part of the defendant carrier is established.

The foregoing Opinion shall stand as and for findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Plaintiff is entitled to judgment in the amount of $1720.56, and shall be responsible for the preparation of an order for judgment and judgment accordingly.