MARTIN IMPORTS, Plaintiff-Appellant,

v.

COURIER–NEWSOM EXPRESS, INC.,
Defendant-Appellee.

No. 77–2012.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1978.
Decided June 30, 1978.

Robert J. Gill, Chicago, Ill., for plaintiff-appellant.

Joel H. Steiner, Chicago, Ill., for defendant-appellee.

Before SWYGERT and TONE, Circuit Judges, and JAMESON, Senior District Judge.*

JAMESON, Senior District Judge.

Appellant, Martin Imports, brought this action under 49 U.S.C. § 20(11) to recover the value of 250 cases of wine which froze while in the custody of appellee, Courier-Newsom Express, Inc., a motor common carrier. Following a non jury trial, the district court orally found in favor of appellant, and judgment was entered for appellant. Appellee filed a motion to alter and amend the findings of fact and conclusions of law. The court granted the motion and entered judgment in favor of appellee. We reverse.

### Factual Background

At approximately 4:30 P.M. on December 23, 1974, a driver for the appellee picked up 250 cases of wine at the facilities of appellant's agent in Chicago, Illinois, where they were loaded into an unheated truck trailer. The shipment had been stored inside at the agent's loading dock. The driver delivered the trailer to appellee's terminal between 6:15 and 6:30 P.M. He informed the terminal manager of his arrival and dropped the trailer at the dock closest to the terminal office, which is customary when a trailer contains alcoholic beverages.

* The Honorable William J. Jameson, United States Senior District Judge for the District of Montana, is sitting by designation.

The shipment remained on the trailer at appellee's terminal until approximately 2:00 A.M. on the morning of the 24th, when the trailer was picked up by another driver and driven to Rockford, Illinois, 87 miles away. The trip took about three hours, so that the shipment would have arrived in Rockford at about 5:00 A.M. No other freight was carried to Rockford on the trailer.

The driver dropped the trailer off at appellee's Rockford terminal. The terminal was closed, and no employees were there. Under their collective bargaining agreement both December 24 and 25 were non-work days. No attempt was made to notify the consignee of the arrival of the shipment.

The trailer remained in the terminal yard, unheated, until the morning of December 26. During that period the temperature in Rockford was below freezing for the most part, ranging from 6° to 35° Fahrenheit. The shipment was tendered to the consignee on December 26. The consignee refused to accept delivery because the wine had frozen and many of the bottles had exploded. Wine after freezing has little value.

### Carrier Liability

■ Section 20(11) of Title 49 provides that a common carrier "shall be liable" to a shipper "for any loss, damage, or injury to [the shipper's] property caused by it . . . ." The Supreme Court has made it clear that section 20(11) "codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by '(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods'". *Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964). In *Elmore & Stahl* the Court held that "to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of dam-

ages. Thereupon the burden of proof is upon the carrier to show *both* that it was free from negligence *and* that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability". *Id.* at 138, 84 S.Ct. at 1145 (emphasis added). Thus, once the shipper has made out a prima facie case, the law places upon the carrier a substantial double burden in order to avoid liability.

### The District Court's Decision

Following the submission of evidence and oral argument, the district court ruled from the bench that appellant had made a prima facie case in proving that the wine was delivered to appellee in good condition and was in damaged condition when it was offered to the consignee. The court found further that although appellee "had sustained its burden of showing that it was free from negligence", it had not carried its additional burden of showing "that the damage here was occasioned by an inherent vice or the nature of the goods". Accordingly, on March 16, 1977, judgment was entered in favor of appellant for $2,891.15.

On August 1, 1977, the court granted appellee's motion to alter and amend the court's findings and judgment. In its memorandum decision the court found that "[t]here was no unreasonable delay in making delivery because, as plaintiff should have anticipated when it made delivery to defendant on December 23, defendant's employees did not work on December 24 and 25 because they were holidays". As in its prior oral decision, the court concluded that appellee had not been negligent in its handling of the wine shipment. The court then concluded further, however, that the temperatures which would cause wine to freeze "were not matters of common knowledge" and the damage to the wine was caused "solely by the operation of the temperature on the wine". Therefore, the court held, appellee had carried its second burden of showing that the damage was due to one of the excepted causes relieving a carrier of liability, namely the inherent vice or nature of the commodity shipped.

### Negligence

Appellant contends, *inter alia*, that the court erred in finding that appellant "should have anticipated when it made delivery to defendant on December 23, defendant's employees did not work on December 24 and 25 because they were holidays". We agree. Obviously December 25 was a holiday. We find nothing in the record, however, to show that appellant knew or should have known that under appellee's collective bargaining agreement with its employees December 24 was also a holiday. Appellant's own employees worked on December 24.

The parties stipulated that the "usual transit time from Chicago to Rockford . . . is next morning or second day delivery". Appellee's district and terminal manager testified that normally shipments from Chicago to Rockford are delivered the day after tender, except for days preceding holidays and on Fridays. In 1974 December 25th fell on Wednesday. Had the shipment been tendered on Tuesday, the 24th, appellant could not of course have anticipated delivery until the 26th. We perceive no reason, however, from the evidence presented why appellant could not reasonably have anticipated delivery on December 24 of the shipment tendered on Monday, the 23rd.

Appellee's manager testified further that appellee knew when it accepted the shipment that it contained wine and knew that due to the collective bargaining agreement it would not be delivered the next day, as shipments tendered on Mondays normally would be. He said appellee also knew that the shipment would remain in the trailer and the trailer would be left outside until its employees returned to work on the 26th. And, after the shipment arrived in Rockford, there was no attempt to communicate with or notify the consignee of its arrival until the 26th.[1] Under these circumstances we can only conclude that appellee was negligent in failing to advise the appellant that its shipment would not be delivered according to appellee's normal schedule, due to the fact that under the collective bargaining agreement not only was Christmas day a holiday, but the preceding day as well. While the delay in delivery of the wine arguably may have been reasonable,[2] the failure to advise the shipper in advance of the abnormally long delivery time was not.

We find nothing in the record that would impute knowledge of the collective bargaining agreement to appellant. In appellant's business the day preceding Christmas is apparently among its busiest of the year. It was not unreasonable for it to assume that the carrier would also be open for business that day. It is reasonable to infer that if appellant had any reason to believe that the wine would not be delivered on the 24th according to the normal transit schedule, it would not have tendered the shipment in the first place. Wine freezes if exposed to a temperature of 17° Fahrenheit for 24

---

1. Appellee contends that the consignee was also closed on December 24, so that any attempt to communicate would have been futile. The record reveals that the consignee was a small family-run business. It cannot of course be determined whether it could have been reached on December 24. The crucial facts, however, are (1) appellee's acceptance of the shipment without advising appellant it would not be delivered until December 26 and (2) appellee's failure to attempt notification. In fact, appellee did not know that the consignee was not open on December 24 until the trial, when the consignee's vice president testified to that fact.

2. Appellant has also argued that appellee delayed unreasonably in dispatching the delivery from Chicago. If dispatched earlier, instead of sitting at appellee's terminal for approximately eight hours, the shipment could have arrived in Rockford before the Rockford terminal closed on the 24th. That, however, would have required the carrier to transport the shipment faster than its normal transit time, which was stipulated to be "next morning or second day delivery". Nevertheless it is still clear that the shipment took longer than a normal shipment tendered on Monday afternoon. Once the shipper shows delay the "burden to come forward with an explanation for the delay properly belongs on the defendant". *Shippers Serv. Co. v. Norfolk & W. Ry.*, 528 F.2d 56, 59 (7 Cir. 1976). Here the only explanation for the delay was the collective bargaining agreement making December 24 a holiday.

hours.[3]  Since appellant, a wine merchant, well knew this propensity to freeze, it surely would not have tendered the shipment if it had anticipated that it would be left exposed to the low temperatures then extant for not only the short duration of the transit itself, but also for 48 additional hours while appellee's employees were not working.

Our conclusion that the appellee was negligent is buttressed by the express provision in appellee's tariffs for carriage of wine, which was paid by the appellant.  By this tariff appellee, in effect, held itself out as capable of transporting wine.  Although appellee insists that it would have been illegal for it to provide heated carriage,[4] and it did not know that wine would freeze, its tariff indicated that it had the knowledge and facilities to properly and adequately transport that commodity.  This would include knowledge that wine will freeze if exposed for several days to subfreezing temperatures.  Section 316(b) of Title 49 requires every motor vehicle carrier "to provide safe and adequate service, equipment, and facilities for the transportation of property  . . . ."  We believe the appellee failed in its duty to provide safe and adequate equipment and facilities for the transportation of this commodity—wine—which it voluntarily accepted pursuant to the terms of an express tariff.[5]

### Conclusion

We conclude that the record does not sustain a finding that appellant knew or should have known that appellee's Rockford terminal would be closed on December 24. Appellee accepted the shipment knowing that it was wine, that sub-freezing temperatures would be encountered, and that there would be a delay in delivery of 48 hours in excess of the normal transit schedule.  Appellee was negligent in failing to advise appellant that the wine would not be delivered until December 26—two full days after the normal time of delivery.  We reverse the judgment of the district court and order that judgment be entered in favor of the appellant in the amount of $2,891.15.

---

**3.**  The district court found that the "damage to the wine resulted from the natural tendency of the wine to freeze at temperatures of 17° Fahrenheit if exposed for a period of 24 hours, or at 27°, Fahrenheit if exposed for a period of 72 hours", but concluded that "these facts were not matters of common knowledge".

**4.**  Appellee's tariffs did not provide for heated carriage and tariff provisions must be strictly adhered to.  Provision of services not provided for constitutes an improper preference.  See, e. g., *Davis v. Cornwell*, 264 U.S. 560, 44 S.Ct. 410, 68 L.Ed. 848 (1924); *Atchison T. & S. F. Ry. v. Springer*, 172 F.2d 346 (7 Cir. 1949).  But see *Johnson Motor Transp. v. United States*, 149 F.Supp. 175, 179, 137 Ct.Cl. 892 (1957).  In any event, it is at least arguable that there may well have been other means of protecting the wine, i. e., placing the shipment inside appellee's terminal in either Chicago or Rockford.

**5.**  Appellant contends further that the court erred in holding that the damage was due solely to the inherent nature of the wine, since wine will not freeze with the passage of time unless it is deliberately exposed to sub-freezing temperatures.  It is unnecessary to reach this question in view of our conclusion that the carrier failed to show that it was free from negligence in handling the shipment of wine.