**SOMPO JAPAN INSURANCE COMPANY OF AMERICA and Sompo Japan Insurance, Inc., Plaintiffs,**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY et al., Defendants.**

**Nipponkoa Insurance Company Ltd., Plaintiff,**

v.

**Norfolk Southern Railway Company et al., Defendants.**

Nos. 07 Civ. 2735(DC), 07 Civ. 10498(DC).

United States District Court, S.D. New York.

Sept. 10, 2009.

Maloof Brown & Eagan LLC, by David T. Maloof, Esq., Thomas M. Eagan, Esq., Rye, NY, for Sompo Japan Insurance, Inc., Sompo Japan Insurance Company of America, and Nipponkoa Insurance Company, Limited.

Keenan Cohen & Howard P.C., by Paul D. Keenan, Esq., Charles L. Howard, Esq., Jenkintown, PA, and Gutterman & Associates, by Barry N. Gutterman, Esq., New York, NY, for Norfolk Southern Railway Company, Norfolk Southern Corporation, and the Kansas City Railway Company.

### *MEMORANDUM DECISION*

CHIN, District Judge.

These related cases arise out of a train derailment near Dallas, Texas on April 18, 2006. Plaintiffs Sompo Japan Insurance Company of America and Sompo Japan Insurance Inc. (together, "Sompo") and plaintiff Nipponkoa Insurance Company Limited ("Nipponkoa") insured various shipments of cargo on the derailed train. Defendants Norfolk Southern Railway Corporation, Norfolk Southern Corporation, and the Kansas City Southern Railway Company (collectively, "defendants") operated the train that derailed and the track on which it operated.

Sompo sued defendants under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11706 ("Carmack") and various common law theories. *Sompo*

*Japan Ins., Inc. et al. v. Norfolk S. Ry. Co. et al.,* No. 07 Civ. 2735(DC). Nipponkoa, represented by the same attorneys as Sompo, also sued, bringing similar claims, including a Carmack claim. *Nipponkoa Ins. Co., Ltd. v. Norfolk S. Ry. Co. et al.,* No. 07 Civ. 10498(DC).[1]

I have issued two lengthy opinions relating to this train derailment, one in *Sompo* and another in a related case. *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry.,* 540 F.Supp.2d 486 (S.D.N.Y.2008); *Sompo Japan Ins. Co. of Am. v. Yang Ming Marine Transp. Corp.,* 578 F.Supp.2d 584 (S.D.N.Y.2008), *abrogated in part by Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc.,* 547 F.3d 351, 361–63 (2d Cir. 2008).[2] Familiarity with those opinions is assumed, and the facts and procedural history of these cases will not be set forth herein.

Currently before me are cross-motions for summary judgment in *Sompo,* and defendants' motion for summary judgment in *Nipponkoa.* For the reasons set forth below, Sompo's motion for summary judgment is, with one modification, granted in *Sompo,* and defendants' motion is denied. Defendants' motion for summary judgment in *Nipponkoa* is denied.

### *DISCUSSION*

I address the motions in *Sompo* and *Nipponkoa* in turn.

### I. *Sompo*

#### A. *Sompo's Common Law Claims*

Defendants move for summary judgment as to Sompo's common law claims, on the ground that such claims are preempted by Carmack. Sompo concedes that such

---

claims are preempted, and they are therefore dismissed. Sompo's only remaining claim is under Carmack.

#### B. *Sompo's Carmack Claim*

Defendants move for summary judgment dismissing Sompo's Carmack claim, arguing that Sompo has failed to meet two of the required elements for a Carmack claim. Defendants also challenge Sompo's calculation of damages as to one shipment.

Sompo also moves for summary judgment, arguing that there are no disputed issues of fact for a jury to resolve. Sompo also moves for attorneys' fees, arguing that defendants' position in this litigation is frivolous.

For the reasons that follow, I conclude that Sompo has satisfied its burden under Carmack, and that no reasonable jury could disagree. As defendants do not argue that they have a defense under Carmack, judgment is entered in Sompo's favor, with one modification as to damages.

#### 1. *Applicable Law*

To establish a prima facie case under Carmack, the plaintiff must show the following by a preponderance of the evidence: " '1) delivery to the carrier in good condition; 2) arrival in damaged condition; and 3) the amount of damages caused by the loss.' " *Project Hope v. M/V Ibn Sina,* 250 F.3d 67, 74 n. 6 (2d Cir.2001) (quoting *Camar Corp. v. Preston Trucking Co.,* 221 F.3d 271, 274 (1st Cir.2000)). In considering a motion for summary judgment under Carmack, the Court considers the totality of the evidence to determine whether the plaintiff has made a prima facie showing. *See New York Marine &*

---

**1.** In this Decision, I refer to Sompo's case against defendants as *Sompo* and Nipponkoa's as *Nipponkoa.*

**2.** The Second Circuit's decision in *Ocean World Lines, Inc.,* abrogating in part my deci-

sion in Sompo's case against Yang Ming, has no impact on these cases. The only reference the parties make to *Ocean World Lines, Inc.* is in the context of an argument Nipponkoa advances that I do not consider, as I rule in Nipponkoa's favor on other grounds.

*Gen. Ins. Co. v. S/S Ming Prosperity*, 920 F.Supp. 416, 423 (S.D.N.Y.1996).

 The plaintiff can satisfy the first requirement—delivery to the carrier in good condition—through direct or circumstantial evidence. *See Transatlantic Marine Claims Agency v. M/V OOCL Inspiration*, 137 F.3d 94, 98 (2d Cir.1998).[3] The most common form of direct evidence is a clean bill of lading, which "creates a presumption of delivery in good condition favorable to the plaintiff." *Id.* The clean bill of lading presumption does not apply, however, where, as here, the goods are shipped in sealed shipping containers, because under such circumstances "the carrier is prevented from 'observing the damaged condition had it existed when the goods were loaded.'" *Bally Inc. v. M.V. Zim Am.*, 22 F.3d 65, 69 (2d Cir.1994) (quoting *Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347, 352 (2d Cir.1981)). Where the goods are shipped in sealed containers, the plaintiff must then adduce circumstantial evidence that the goods were delivered to the carrier in good condition.

 The most common form of circumstantial evidence is what is known as the "characteristics of the damage" test. Under this test, the plaintiff can satisfy the first element by showing that "the characteristics of the damage suffered by the goods justify the conclusion that the harm occurred while the goods were in the defendant's custody." *Transatlantic Marine Claims Agency*, 137 F.3d at 99. This test has been applied, for example, where cargo was damaged by seawater after a sea voyage. *Id.*

 Once the plaintiff has made a prima facie showing, the burden then shifts to the defendant to demonstrate that it did not act negligently, *and* that the damage was caused by one of the following exceptions to carrier liability under Carmack: "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). Thus, once the plaintiff succeeds in making a prima facie showing, the carrier faces a decidedly uphill battle to avoid liability. *See Transatlantic Marine Claims Agency v. M/V OOCL Inspiration*, 137 F.3d 94, 98 (2d Cir.1998) (noting that it is " 'the exceptional case' " in which carrier will not be liable) (quoting *Associated Metals & Minerals Corp. v. M/V Arktis Sky*, 978 F.2d 47, 51 (2d Cir.1992)); *Martin Imports v. Courier–Newsom Express, Inc.*, 580 F.2d 240, 242 (7th Cir.1978) (holding that "once the shipper has made out a prima facie case, the law places upon the carrier a substantial double burden in order to avoid liability"). Perhaps for this reason, Carmack is regarded as essentially a strict liability statute. *See Sompo Japan Ins. Co. of Am. v. Union Pac. R.R.*, 456 F.3d 54, 60 (2d Cir.2006).

Courts decide summary judgment motions in Carmack cases no differently than other cases. *See Transatlantic Marine Claims Agency*, 137 F.3d at 101 (holding that "the treatment of a summary judgment motion under COGSA is no different from the way similar motions are dealt with in any other litigation"). The Second Circuit has made clear, however, that, where a defendant focuses its summary judgment motion solely on attacking the plaintiff's prima facie case, the defendant

**3.** *Transatlantic Marine Claims Agency* was decided under the Carriage of Goods by Sea Act (the "COGSA"), 46 U.S.C. app. §§ 1300 *et seq.* Courts regularly cite COGSA cases in Carmack cases, however, because the "prima facie cases for both COGSA and the Carmack Amendment are identical." *Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 73 (2d Cir.2001). Accordingly, I cite both COGSA and Carmack cases in this Decision.

"runs a heavy risk," because if the Court finds that the prima facie case is met, then judgment must be entered in the plaintiff's favor. *See id.*

## 2. *Application*

Defendants' strategy here is not to adduce any "affirmative evidence proving that the damage did not occur while in [defendants'] custody, or [to] indicat[e] that the injury fell under one of [Carmack's] exceptions to liability," but rather to run the "heavy risk" of attacking the adequacy of Sompo's prima facie case. *See id.* Because there are no disputed issues of material fact, and because no reasonable jury could conclude that Sompo has failed to establish a prima facie case, judgment in Sompo's favor is appropriate.

### a. *Delivery in Good Condition*

■ Sompo has adduced sufficient circumstantial evidence to show that the goods were in good condition when delivered to defendants, and no reasonable jury could disagree.

First, the characteristic of the damage that occurred to the goods is circumstantial evidence that the derailment caused the damage.[4] Sompo has submitted photographs of the damaged goods as exhibits, and the goods look just as one would expect them to look after being on a derailed train. The tractors, sushi cases, ice makers, and copiers are mangled and smashed, and the autopart packages are flattened. Most of the goods had to be scrapped they were so damaged, which similarly belies the notion that Sompo arranged to ship already-damaged goods—unless, of course, defendants should have the Court believe that Sompo engaged in an elaborate fraud to ship damaged goods, and *coincidentally* those damaged goods were on a train that derailed.

---

4. I reject defendants' argument that I cannot apply the characteristic of the damage test because it is generally only applied in COGSA cases. As discussed above, courts regularly cite COGSA cases in Carmack cases, and vice versa, and defendants do not offer a single reason why the characteristic of the damage test should not be applied in a Carmack case.

Second, Sompo has adduced unrefuted evidence that the goods were inspected prior to shipment, passed inspection, and were placed in containers designed to withstand the normal rigors of transport. This is circumstantial evidence that the goods were in good condition when delivered to defendants. *See Caemint Food, Inc.*, 647 F.2d at 354 n. 6 (noting that plaintiff could prove cargo in good condition when delivered by showing cargo was "prepared and packaged in accordance with proper procedures and [was] carried to the ship under conditions that should have prevented any damage to the contents en route").

Third, there is no evidence in the record to even suggest that the damage to the cargo was caused by anything other than the violent derailment of the train in Texas. Sompo has submitted evidence that, at each stage of the cargo's journey, no irregularities were reported.[5] Defendants de-vote the majority of their brief to arguing that something other than the derailment could conceivably have caused the damage, but notably absent is any evidence as to what that something could be. At the end of the day defendants' argument amounts to nothing other than "fanciful assumptions that the harm might possibly have occurred outside the defendants' control," *Transatlantic Marine Claims Agency*, 137 F.3d at 99, and such "fanciful assumptions" are insufficient to defeat summary judgment.

The primary argument defendants advance is that Sompo cannot meet its burden as to the first element because Sompo has adduced no evidence that the cargo was stopped at each stage of transport, the seals of the cargo broken, and an inspection performed. Defendants do not, however, point to a single case that requires a shipper to make any such showing to meet its burden.[6] Indeed, the cases are legion

---

5. Defendants devote pages and pages of their brief to a hair-splitting argument to the effect that the mere fact that no incidents were *reported* does not mean that no incidents *occurred*. This is, of course, true, but the fact that no incidents were reported during ship-ment is surely circumstantial evidence that no incidents occurred.

6. As Sompo points out, the reason no court has so held is that such a requirement would grind international commerce to a halt.

holding that a shipper can satisfy its burden under Carmack even without eyewitness testimony as to the condition of the goods. *See, e.g., Sec. Ins. Co. v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 84 (2d Cir.2004) (shipper can satisfy first Carmack element through direct or circumstantial evidence); *A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 1004 (11th Cir.2003) (same); *Nat'l Transp., Inc. v. Inn Foods, Inc.*, 827 F.2d 351, 354 (8th Cir.1987) (same).

Accordingly, I conclude that a reasonable jury could only find that the goods were delivered to defendants in good condition.[7]

### b. *Arrival in Damaged Condition*

■ Defendants challenge Sompo's evidence that two of the three containers in which the ice makers and sushi cases were shipped were damaged upon arrival. Defendants' argument is without merit.

After the derailment, the ice makers and sushi cases were inspected by John Venneman, a marine surveyor. His initial inspection revealed that the majority of the ice makers and sushi cases were damaged beyond repair and were therefore a total loss. (Venneman Report at 5–6). As to the remaining cargo, he stated that his inspection did not reveal any apparent damage, but that, after receiving communications from the manufacturer and the assured, he concluded that all three containers were a total loss. (*See id.* at 7).

Defendants quibble with this evidence on a number of meritless grounds, and ultimately appear to argue that some of the cargo could have been salvaged. The law is clear, however, that any loss in value that is "more than trivial" is sufficient to meet the damages requirement under Carmack. *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 435 (2d Cir. 2005) (holding that "evidence of more than trivial loss in market value—as measured by the difference between (a) the market value of the goods in question in the condition in which they should have arrived at their destination, and (b) the market value of the goods in the condition in which they actually arrived—is sufficient to prove that a plaintiff's cargo was damaged upon delivery. And, in itself, such evidence meets the 'damages' requirement for a prima facie case of liability under COGSA."). There cannot be any dispute, however, that the loss in value to the ice makers and sushi cases was "more than trivial," because they were ultimately declared a total loss.

Based on this evidence, no reasonable jury could conclude that the ice makers and sushi cases were not in damaged condition upon delivery.

### c. *Damages*

■ There is only one dispute as to damages.[8] As to the Kubota tractors, Sompo seeks damages in the amount of $979,393.14. As defendants point out, Sompo states that it paid its assured $955,441.22 and its adjuster $13,951.92, the total of which is $969,393.14. Sompo explained in its reply, however, that the additional $10,000 represents a $10,000 deductible under Sompo's insured's policy. In other words, the insured—and not Sompo—bore the first $10,000 of the loss. Sompo cites one case for the proposition

---

7. Defendants also argue at length that Sompo has failed to adduce evidence to prove that the derailment caused the damage to the cargo. Defendants cite no case holding that causation is a required element under Carmack, however, because there is no such requirement. A plaintiff need only prove the three elements discussed above to make a prima facie case under Carmack.

8. Defendants raised one other issue, but that was evidently based on a typographical error that Sompo corrected in its reply brief.

that it is entitled to recover for its insured's deductible, but the case cited says no such thing. In *Amstar Corp. v. M/V Alexandros T.*, the Court held that "damages must be measured in terms of the economic loss to the plaintiff, not by what may have been paid to the plaintiff under an insurance contract." 472 F.Supp. 1289, 1296 (D.Md.1979). Here, Sompo's economic loss is the actual amount it paid to its insured on the policy—$969,393.13—and that is all it is entitled to recover.

#### d. Defendants' Burden

As discussed above, Sompo has established a prima facie case under Carmack, and no reasonable jury could disagree. The burden now shifts to defendants to show (1) that they did not act negligently, *and* (2) that the damage was caused by an exception to carrier liability under Carmack.

Defendants acknowledge that the derailment does not fall within one of the exceptions to carrier liability under Carmack. (Defs. Opp. at 25 n. 8). Because defendants cannot meet their burden without demonstrating that one of the exceptions applies, judgment is entered in Sompo's favor on its Carmack claim.

### C. Pre–Judgment Interest

■ Sompo moves for pre-judgment interest, and defendants do not appear to contest it. "Although the allowance of prejudgment interest in admiralty is said to be a matter committed to the trial court's discretion, it should be granted in the absence of exceptional circumstances." *Mitsui & Co. v. Am. Export Lines, Inc.*, 636 F.2d 807, 823 (2d Cir.1981) (citations omitted). There are no exceptional circumstances present here, and Sompo is therefore entitled to pre-judgment interest, calculated at the rate of 9% per annum.

Sompo requests that the interest begin to run as of April 23, 2006, the date of loss. The law is clear, however, that interest does not begin to run until the date on which the goods should have been delivered by the carrier. *Id.* at 824 ("The case law is overwhelmingly to the effect that, both in land and in sea carriage, prejudgment interest is ordinarily awarded from the time when destroyed or lost goods should have been delivered by the carrier."). Sompo does not indicate in its papers when the goods were to be delivered, and thus pre-judgment interest cannot be calculated at this time.

### D. Attorneys' Fees

Sompo moves for attorneys' fees, arguing that defendants' opposition to Sompo's motion is so frivolous as to warrant sanction.

■ An award of attorneys' fees is only appropriate where a party acts in bad faith, or with an improper purpose, such as a desire to delay or harass. *See generally Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71 (2d Cir.2000). Here, while defendants' arguments border on the frivolous, and it is difficult to understand how defendants could make the arguments they have put forth, I cannot conclude that they acted in bad faith in putting forth a defense. Accordingly, Sompo's motion for attorneys' fees is denied.

## II. Nipponkoa

For the reasons that follow, defendants' motion for summary judgment is granted as to Nipponkoa's common law claims, and denied as to Nipponkoa's Carmack claim.

### A. Nipponkoa's Common Law Claims

Defendants move for summary judgment dismissing Nipponkoa's common law claims, on the ground that such claims are preempted by Carmack. Nipponkoa con-

cedes that such claims are preempted, and they are therefore dismissed. Nipponkoa's only remaining claim is under Carmack.

### B. *Nipponkoa's Carmack Claim*

Defendants move for summary judgment only as to the first element required for a Carmack claim—namely, that the goods were delivered to defendants in good condition. Nipponkoa does not cross move for summary judgment.

For the same reasons discussed above in the context of *Sompo,* defendants' motion is denied, as Nipponkoa has adduced sufficient circumstantial evidence that the auto and engine parts were delivered to defendants in good condition. The characteristic of the damage that occurred is consistent with a train derailment, there is evidence that the goods were inspected and properly packed prior to shipment, and there is no evidence of any irregularities during shipment prior to the derailment. Based on this evidence, a reasonable jury could only find that Nipponkoa delivered the goods to defendants in good condition. Accordingly, defendants' motion for summary judgment dismissing Nipponkoa's Carmack claim is denied.[9]

### *CONCLUSION*

For the foregoing reasons, defendants' motion for summary judgment in *Nipponkoa Insurance Co., Ltd. v. Norfolk Southern Railway Co. et al.,* No. 07 Civ. 10498(DC), is granted in part and denied in part. The parties in *Nipponkoa* shall appear for a pretrial conference on September 25, 2009 at 2:00 p.m. in Courtroom 11A.

Sompo's motion for summary judgment in *Sompo Japan Insurance, Inc. et al. v. Norfolk Southern Railway Co. et al.,* No.

07 Civ. 2735(DC), is granted, and defendants' is denied. Judgment will be entered in favor of Sompo and against defendants in the amount of $1,585,351.26, plus pre-judgment interest as well as costs. Sompo shall submit a proposed judgment that includes a pre-judgment interest calculation, on notice, within five business days hereof.

SO ORDERED.

---

9. Because I conclude that the circumstantial evidence is sufficient to establish that the goods were delivered in good condition, I do not consider Nipponkoa's alternative argument that the so-called "last carrier rule" compels the same conclusion.